IN the MATTER OF: BADGER LINES, INC., Debtor,

APPEAL OF: Douglas F. MANN, Supplementary-Receiver-Appellant,

v.

BANKRUPTCY ESTATE OF BADGER LINES, INC., Robert Waud, Trustee, The Wisconsin Health Fund and The United States Trustee, Appellees.

Supreme Court

*No. 98–0888–CQ. Oral argument November 11, 1998.—Decided March 17, 1999.*

(Also reported in 590 N.W.2d 270.)

For the supplementary-receiver-appellant there were briefs by *Robert L. Mann* and *Kohner, Mann & Kailas, S.C.*, Milwaukee and oral argument by *Robert L. Mann & Matthew P. Gerdisch.*

For the appellees the cause was argued by *John R. Byrnes*, Assistant U.S. Trustee, with whom on the brief was, *David W. Asbach,* Assistant U.S. Trustee and *Ira Bodenstein*, U.S. Trustee.

¶ 1.   ANN WALSH BRADLEY, J.   This case is before the court on a certified question from the United States Court of Appeals for the Seventh Circuit. Wis. Stat. § 821.01 (1995–96);[1] 7th Circuit R. 52. The essen-

---

[1] Unless otherwise noted, all further references to the Wisconsin Statutes will be to the 1995–96 version.

tial question before this court[2] is whether a creditor who initiates supplementary proceedings under chapter 816 must do more than serve a debtor with notice to appear in order to obtain a superior lien that cannot be overcome by another creditor on a simple contract. Because we are persuaded both by authority from other jurisdictions and by public policy considerations, we conclude that a creditor's lien is valid and superior against other creditors at the time the creditor serves the debtor with a summons to appear at the supplementary proceeding under Wis. Stat. § 816.03(1)(b).

¶ 2. The facts in this case are not at issue but are of paramount importance and therefore require elaboration. In the fall of 1991, Emerald Industrial Leasing Corporation (Emerald) filed suit against Badger Lines, Incorporated (Badger) in the circuit court of Milwaukee County. Emerald claimed that Badger owed it just over $80,000 for services rendered to Badger but not paid by Badger. On October 18, 1991, the circuit court entered a default judgment in favor of Emerald in the amount

---

[2] The Seventh Circuit certified the following question:

Does Wisconsin law require that a lien obtained by a judgment creditor who institutes supplementary proceedings under Wis. Stat. § 816.04 be perfected, and if so, how is the lien to be perfected?

That court also expressly invited this court to "reformulate [that] question if [we] feel that course is appropriate." *In the Matter of Badger Lines, Inc.*, 140 F.3d 691, 699 (7th Cir. 1998). Though the essence of the certified question remains unchanged, this court believes that the way the issue is framed above more accurately reflects the arguments of the parties.

Another way of asking the question is whether a receiver's lien is "self perfected" when notice is served upon the debtor. Either way the question is framed, it ultimately asks whether some additional step is required to have a lien that is superior against another creditor on a simple contract.

of $82,120.26, plus costs and interest, and docketed that judgment on October 21, 1991.

¶ 3.   Emerald obtained an order from the circuit court directing Badger to appear for a supplementary proceeding under Wis. Stat. § 816.03 and enjoining Badger from transferring its assets. That order was served on Badger on October 30, 1991. On December 17, 1991, the court commissioner appointed Douglas F. Mann as supplementary receiver on behalf of Emerald, issued a "turnover" order that instructed Badger to turn over its assets within ten days, and enjoined Badger from transferring its assets. Wis. Stat. § 816.04. The court commissioner's orders were served on Badger and filed with the Milwaukee County clerk of court. Wis. Stat. § 816.035(1).

¶ 4.   On February 11, 1992, Badger filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. The bankruptcy court appointed Robert M. Waud as the Chapter 7 trustee. In March of 1992, Mann filed with the clerk of bankruptcy court a proof of claim asserting that he had a receiver's lien on behalf of Emerald. Waud issued notice of his final report that detailed his plan for dispersing Badger's available assets, valued at $46,785.13. That report treated Emerald as an unsecured creditor that would receive nothing from the distribution of Badger's assets. Mann filed a motion with the bankruptcy court seeking an order from the court for Waud to turn over the funds from the assets on the grounds that Mann had a judicial lien under 11 U.S.C. § 101(36). Under the Bankruptcy Code such a lien is prior and superior to any lien held by the creditors in Waud's report so long as it is not an avoidable preference under 11 U.S.C. § 547(b).

¶ 5. The bankruptcy court held that under Wisconsin law the date on which a receiver is appointed is the date on which a receiver's lien is created. *In re Badger Lines, Inc.*, No. 92–20872-JES (Bankr. E.D. Wis. Oct. 25, 1995). This meant that Emerald's lien, created at Mann's appointment on December 17, 1991, came into existence within the 90-day period prior to the filing of bankruptcy (commencing on November 13, 1991) and meant that the trustee could avoid the lien as being preferential. *See* 11 U.S.C. § 547(b)(4)(A).

¶ 6. Mann appealed and the United States District Court for the Eastern District of Wisconsin reversed. *In re Badger Lines, Inc.*, No. 95-C–1243 E.D. Wis. Mar. 12, 1996). The district court determined that under Wisconsin law Emerald obtained a receiver's lien[3] on the date on which Badger was served with the subpoena to appear for a supplementary proceeding. That date, October 30, 1991, was outside the 90-day preference period. The district court did not determine whether Wisconsin law required a receiver's lien to be perfected in some manner, how that perfection was to be accomplished, and whether that perfection took place outside of the preference period. The matter was remanded to the bankruptcy court for a determination of these matters.

¶ 7. Although Wisconsin had no statute or case law directly on point, the bankruptcy court on remand concluded that *Alexander v. Wald*, 231 Wis. 550, 286

---

[3] We recognize that the lien ultimately exists for the benefit of the creditor and that every case will not have a receiver appointed. Where no receiver is appointed it is a misnomer to call the lien a "receiver's lien." Nevertheless, since a receiver was appointed here, that term has been employed by the various courts that have heard this case. We will perpetuate that practice.

N.W. 6 (1939) and *Kellogg v. Coller*, 47 Wis. 649, 3 N.W. 433 (1879), along with persuasive authority from other jurisdictions and public policy reasons, established that perfection of a receiver's lien was required under Wisconsin law. *In re Badger Lines, Inc.*, 199 B.R. 934 (Bankr. E.D. Wis. 1996). The bankruptcy court further concluded that such perfection was accomplished either by the appointment of a receiver or the issuance of a turnover order. Since both of these events occurred on December 17, 1991, they were within the 90-day preference period and the lien was therefore avoidable.

¶ 8.   Mann again appealed to the district court which this time affirmed. *In re Badger Lines, Inc.*, 206 B.R. 521 (E.D. Wis. 1997). Looking essentially to the same Wisconsin and foreign cases, with the addition of *Holton v. Burton*, 78 Wis. 321, 47 N.W. 624 (1890), the district court determined that Wisconsin law required perfection of a receiver's lien in order for that lien to be valid. Much like the bankruptcy court, the district court determined that perfection would occur either at the time the receiver was appointed or at the time a turnover order was issued. Since both of these events occurred within the 90-day preference period, the district court agreed with the bankruptcy court that Mann's receiver's lien was avoidable.

¶ 9.   Mann appealed to the Seventh Circuit. That court reviewed the cases cited by the parties and relied upon by the bankruptcy and district courts and concluded that they were not dispositive. *In re Badger Lines, Inc.*, 140 F.3d 691 (7th Cir. 1998). The Seventh Circuit noted that none of the cited cases dealt specifically with "perfection," none of the cases presented the exact facts presented here, and none was decided after 1939 with most before 1900. Given these facts, especially considering that bankruptcy and debtor/creditor

law has developed significantly since the late nineteenth century, the Seventh Circuit refused to speculate how this court would decide the issue of perfection and instead certified the issue to this court. Wis. Stat. § 821.01.

¶ 10.   This case requires us to ascertain the necessary steps to obtain an enforceable lien. Therefore, it presents a question of law which this court reviews independently of the federal courts' determinations. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 400, 573 N.W.2d 842 (1998); *Dziewa v. Vossler*, 149 Wis. 2d 74, 77, 438 N.W.2d 565 (1989).

¶ 11.   While the Seventh Circuit is correct that this case is ultimately a bankruptcy preference case, the question before this court is only incidentally related to bankruptcy and need not even arise in conjunction with bankruptcy. Rather, we view this as an issue between two unsecured judgment creditors, one of whom happens to be a trustee for the estate in bankruptcy and consequently brings with him the trappings of bankruptcy law and procedure. For all of its uniqueness, bankruptcy law normally looks to state law to determine property interests. *Butner v. United States*, 440 U.S. 48, 55 (1979). As a result, unless perfection is a concept under state law, "it is not a valid concept under the Bankruptcy Code." *In re Swartz*, 18 F.3d 413 (7th Cir. 1994).

¶ 12.   The parties are in agreement that Wisconsin law does not specify whether a receiver's lien must be perfected and, if so, how that is to be accomplished. We agree with the parties that this is an open question in Wisconsin law. Supplementary proceedings are actions initiated by unsatisfied judgment creditors to

653

identify a debtor's property, other than real property, on which the creditor can execute his or her judgment. These proceedings, governed by chapter 816 of the Wisconsin statutes, are the statutory equivalent of a creditor's bill in equity at common law and follow essentially the same rules of law. *Alexander v. Wald*, 231 Wis. 550, 552, 286 N.W. 6 (1939). While the statutory scheme authorizes the appointment of a receiver, the statute says not a word about a receiver's lien. In light of this statutory silence this court has on prior occasions concluded that a receiver's lien is an equitable creation and therefore governed by the common law. *Candee v. Egan*, 84 Wis. 2d 348, 360, 267 N.W.2d 890 (1978).

¶ 13.   In the context of liens, "perfection" has more than one definition. *See Fidelity Financial Services, Inc. v. Fink*, 118 S. Ct. 651, 654 (1998). For current purposes, perfection "refers to that single date, or moment in time," when a creditor obtains a superior lien that cannot be overcome by another creditor on a simple contract. *In re Loken*, 175 B.R. 56, 62 (9th Cir. B.A.P. 1994); *see also* 11 U.S.C. § 547(e)(1)(B). Requiring a creditor to perfect a lien arose as a method of providing notice of the lien to third parties and was a way of minimizing the occurrence of "secret liens" that could not be discovered by third parties. *In re Van Kylen*, 98 B.R. 455, 464 (W.D. Wis. 1989).

¶ 14.   In Wisconsin, if a receiver's lien requires perfection, that requirement stems from our case law and not from any provision within chapter 816. *C.f.*, Wis. Stat. § 409.301 *et seq.* (perfecting security interests in secured transactions). The trustee argues that our cases have presumed that something more than service of a subpoena to appear at a supplementary proceeding is required for an enforceable lien. How-

654

ever, the trustee also admits that to date we have not specifically articulated the contours of that additional requirement.

¶ 15.  Both parties agree that the most relevant Wisconsin case law is to be found in three rather old cases: *Alexander*, 231 Wis. at 550 (1939); *Holton*, 78 Wis. at 321 (1890); and *Kellogg*, 47 Wis. at 649 (1879). Of these three cases, *Holton* serves as the trustee's best authority that a lien obtained by a creditor in supplementary proceedings must be perfected to be enforceable. In *Holton*, this court concluded that a debtor can voluntarily assign his property in equal shares even after supplementary proceedings have been initiated against him or her. This court concluded that such a voluntary assignment was permissible because "the particular creditor has not acquired a valid lien upon the property of such insolvent [debtor] before proceedings for such distribution are instituted." *Holton*, 78 Wis. at 324. *See also id.* at 328 (holding that voluntary assignment is permissible "when such assignment is made before the creditor has acquired any specific lien upon property under such proceedings. . .").

¶ 16.  The trustee argues that language in *Holton* strongly supports its contention that a creditor does not obtain an enforceable lien by merely subpoenaing a debtor to appear at a supplementary proceeding. This court might be more inclined to agree with the trustee if *Holton* were the only word on the matter. However, the discussion in both *Kellogg* and *Alexander* diminishes the trustee's argument.

¶ 17.  In *Kellogg*, two creditors disputed which had the prior lien against a debtor. Although Kellogg

had the sheriff serve an order to appear on the debtor before Coller obtained her order to appear, the sheriff inadvertently made a technical error in his affidavit that rendered Kellogg's order invalid. *Kellogg*, 47 Wis. at 651. Before the sheriff's mistake was rectified, Coller served the debtor with her order to appear. *Id.*

¶ 18.    This court concluded that the sheriff's good faith effort at service was sufficient to give Kellogg a prior lien against the debtor. *Id.* at 656–57. In so holding, this court said nothing of perfection, rather noting that "the general rule was that the creditor who, after filing his bill, obtained the first service of the subpoena upon the judgment debtor, thereby obtained a prior lien upon the equitable assets of such debtor." *Id.* at 656. In fact, this court paid scant attention to anything other than the date of service, minimizing an event that the trustee specifically has argued is determinative:

> After a receiver has been appointed in the first proceeding, and has duly qualified as such, we see no objection to the appointment of the same receiver in all other proceedings against the same debtor. *This is little more than a formal matter.*

*Id.* at 658 (emphasis added). This court is not persuaded that the appointment of a receiver is the apogee of obtaining a valid lien against a debtor when we have called that appointment nothing more exalted than a "formal matter."

¶ 19.    In *Alexander* this court faced an issue similar to the present one where a dispute arose between a creditor who had initiated supplementary proceedings and a bankruptcy estate. In *Alexander* both the service of notice on the debtor and the appointment of a receiver occurred outside the time the bankruptcy

estate could avoid preferences. *Alexander*, 231 Wis. at 551. Notwithstanding this fact, this court made scant mention of the appointment of a receiver instead reiterating the importance *Kellogg* placed on the creditor's service of the order to appear. *Id.* at 552. Again, this court is persuaded that if the appointment of a receiver was as significant an event as the trustee would have us believe, this court would have at least referenced that fact in these opinions.[4]

¶ 20.  However, this court did not. This court therefore has come to the conclusion that our prior decisions only dimly illumine our path in this case. In light of Wis. Stat. chapter 816's silence and the limited aid provided by our earlier decisions, this court must turn to policy considerations to resolve this issue.

¶ 21.  At oral argument, and in the Seventh Circuit, the trustee maintained that Wisconsin's aversion to "secret liens" tipped the scales in favor of perfecting the lien before it became enforceable. The trustee contended that, short of physically searching the record of judgments in every courthouse, a bankruptcy trustee will have no way of knowing whether the possibility exists that a creditor has obtained a lien superior to it. The trustee argues that it is certainly conceivable, and probably likely, that a bankruptcy trustee could go through the time and effort of locating a debtor's property only to have a receiver appear once the heavy lifting is completed, assert its prior lien, and inequitably reap the fruits of the trustee's labor.

---

[4] It is not altogether uncommon for a state to conclude that the creation of a lien without requiring some sort of perfection of that lien is sufficient to obtain a superior lien against other creditors. *See, e.g., In re Prior*, 176 B.R. 485, 495 (S.D. Ill. Bankr. 1995) (applying Illinois law).

■

¶ 22.   This court certainly is aware that Wisconsin does not favor secret liens, *Wilson v. Rudd*, 70 Wis. 98, 35 N.W. 321 (1887), and we in no way back away from that aversion. However, this court remains ultimately unconvinced that either the appointment of receiver or the issuance of a turnover order has the effect of making the lien significantly more public than service of a subpoena upon the debtor.

¶ 23.   The appointment of a receiver or the issuance of a turnover order does not record the existence of the lien in some statewide registry. The trustee recognizes this but argues that either of these actions would nonetheless have the practical effect of making the existence of the lien more public. The trustee contends that practically speaking, one may assume that the receiver would act quickly and deliberately to obtain actual possession of the debtor's property and thereby announce to the world that a creditor has a lien on the debtor's property. However, as the Seventh Circuit also recognized, the trustee's argument would be more persuasive were it arguing that actual possession of the debtor's property perfected a creditor's lien.[5]

¶ 24.   This court is more persuaded by the United States Court of Appeals for the Ninth Circuit's analysis of this issue in *In re Hilde*, 120 F.3d 950, 956 (9th Cir. 1997). *Hilde* presented facts indistinguishable from

---

[5] The trustee asserted as much at oral argument. Whatever its merits, concluding that perfection of a lien occurs only with the actual possession of the debtor's property is not without its own set of problems. Most noticeably, "possession" is not a significantly more definite word than "perfection." Especially when dealing with mobile personal property, as these liens do, ascertaining when and how possession occurs can be difficult and imprecise.

this case and therefore required the Ninth Circuit to address these same issues of liens and perfection. Although the *Hilde* court arrived at its decision in large part due to a California statute that has no counterpart in Wisconsin, we nonetheless find that court's analysis on this issue of secret liens helpful.

¶ 25.  *Hilde* noted that a trustee is "not without options to deal with the situation" of the existence of unknown liens on the debtor. *Id.* The trustee has three options. First, the trustee can inquire of the debtor to see whether he or she has been served with notice to appear at a supplementary proceeding by any creditor. *Id.* Second, though somewhat arduous, the trustee can search the court records to see whether the debtor has had any judgments against it. *Id.* At oral argument in this case, the trustee conceded that this was possible though it was somewhat time consuming. Third, a trustee can contact a debtor's creditors to see whether any of them have received a judgment against the debtor and have initiated supplementary proceedings. *Id.* Though these options may at times be rather inefficient and will depend on the veracity of the debtor and creditors for their success, this court concludes that these options are not impossible to accomplish and in many cases are quite simple and unobtrusive.

¶ 26.  Moreover, this court believes that these options are more closely aligned with the actual practices of parties involved in these matters. As Mann pointed out at oral argument, it is not uncommon for the various creditors to encounter one another in the course of their attempts to seek out the available assets of the debtor. When these encounters occur, the creditors are able to determine which of them first served the debtor to obtain the superior lien. By concluding that a receiver's lien is valid at the time the debtor is

served, the competing creditors will readily and quickly be able to ascertain which among them has the superior lien. Once that creditor is determined, the other creditors will no longer continue in their efforts of location and recovery and will only act to insure that the superior creditor acts with due diligence.

¶ 27.   Aside from the fact that this court does not find the trustee's secret lien argument persuasive, we also conclude that policy interests are served by holding that no additional step is necessary to perfect a receiver's lien after service. As Mann asserted at oral argument, requiring an additional step beyond service in order to obtain a superior lien removes any incentive for negotiation and settlement between the creditor and the debtor. If the creditor has no protection unless and until a receiver is appointed, he or she will in all likelihood bolt to have the court appoint a receiver who will then go about the business of liquidating the debtor's assets. The same can be said regarding the issuance of a turnover order. Even if the parties were contemplating negotiation or in the process of settlement, the creditor would need to seek a receiver or turnover order to preserve his or her rights. Such imposed protraction benefits no one, wastes the parties' time and money, and burdens the courts with potentially unnecessary hearings and proceedings.

██

¶ 28.   In summary, this court concludes that Wis. Stat. chapter 816 does not articulate whether a creditor must do more than serve a debtor with notice to appear at supplementary proceedings in order to obtain a valid and superior lien against another creditor on a simple contract. Additionally, the case law of this court does not provide definitive answers to the issue. Based on the persuasive authority from other jurisdictions as

noted above, as well as policy arguments advanced by Mann in this court, we conclude that a receiver's lien is superior against another creditor on a simple contract at the time the creditor serves the debtor with notice to appear at supplementary proceedings under Wis. Stat. chapter 816. Accordingly, Wisconsin law does not require a creditor to take additional steps to perfect a receiver's lien beyond service on the debtor.

*By the Court.*—Certified question answered in the negative and cause remanded to the United States Court of Appeals for the Seventh Circuit.