SHIRLEY S. ABRAHAMSON, C.J.
¶ 62. {dissenting). The majority opinion reaches its erroneous conclusion today by operating in its own imaginary world, divorced from reality.
¶ 63. In the real world, our courts have recognized for the last 150 years a judgment creditor's common-law equitable lien, superior to other creditors, created by service of notice of a supplementary proceeding upon a judgment debtor on the debtor's non-exempt personal property. In the real world, creditors and debtors have relied upon this judgment creditor's common-law equitable lien. In the real world, the parties in the instant case dispute the applicability of this common-law equitable lien to the undisputed facts.
¶ 64. In the world of the majority opinion, a judgment creditor's common-law equitable lien and the issues raised by the parties simply have not existed and will not exist in the future.[1]
*375 ¶ 65. The issue in this case as presented by the parties is whether Decade Property obtained a common-law equitable lien on Jack Collier's personal property superior to SBl's interest when Decade Property, the judgment creditor, served Collier, the judgment debtor, with an order to appear at a supplemental examination but the clerk of circuit court failed to docket the judgment.[2]
¶ 66. SB1 asserts a superior common-law equitable lien on Jack Collier's non-exempt personal property even though SB1 served Collier notice of the supplementary proceeding after Decade Property served Collier, but SBl's judgment was docketed before Decade Property's judgment was docketed. The circuit court and court of appeals agreed with SB1.
¶ 67. Rather than address the issue of how a judgment creditor obtains a common-law equitable lien, the majority opinion broadly and surprisingly holds *376 that supplemental proceedings do not give rise to any lien whatsoever on any of the debtor's personal property. "[Supplemental proceedings under ch. 816 are a discovery tool in aid of judgment collection." Majority op., ¶ 3. "Supplementary proceedings provide a mechanism by which to obtain information in aid of judgment collection." Majority op., ¶ 27.
¶ 68. According to the majority opinion, a judgment creditor obtains an interest in a judgment debtor's identified non-exempt personal property superior to other unsecured creditors when the judgment creditor (1) dockets its money judgment, (2) identifies specific, non-exempt personal property, and (3) "levies" (by at least one of three enumerated means) the specific non-exempt personal property it has identified. Majority op. ¶¶ 3, 23, 33.
¶ 69. The long-recognized judgment creditor's equitable common-law lien arising from supplementary proceedings simply does not exist in the world created by the majority opinion. Yet in the real world, creditors and debtors have long relied on the court's recognition of the common-law equitable lien.[3] In writing the common-law creditor's lien out of Wisconsin legal history, the majority opinion mischaracterizes or ignores existing case law.
¶ 70. To put the majority opinion's rewriting of history and case law in proper perspective, I first review the law regarding the judgment creditor's common-law equitable lien arising on a debtor's personal non-exempt property in supplementary proceedings. I then discuss our most recent case, In re Badger Lines, Inc., 224 *377 Wis. 2d 646, 590 N.W.2d 270 (1999), a case that the majority opinion in effect overrules without confronting the doctrine of stare decisis.
¶ 71. Before I tackle these two issues, I enumerate a few other flaws in the majority opinion (not necessarily in order of significance), but I do not address each in great detail.
¶ 72. First, the majority opinion is confused and confusing as it describes its holding in different ways in different parts of the opinion. Compare majority op., ¶¶ 3, 20, 33, 42, 45, 47, 48, 52, 60.
¶ 73. Second, the majority opinion entangles the law on liens on real property and personal property. See majority op., ¶ 58; Associated Bank N.A. v. Collier, No. 2011AP2597, unpublished slip op., ¶ 14 (Wis. Ct. App. Nov. 28, 2012).
¶ 74. Third, "levying" is the important concept in the majority opinion, yet it is undefined. According to the majority opinion, a lien on a judgment debtor's non-exempt personal property turns on the judgment creditor's "levying" on the non-exempt personal property. Majority op., ¶ 3.
¶ 75. Yet service of notice of a supplementary proceeding has been characterized by the court as an "equitable levy." Supplementary proceeding on the debtor "operates as an equitable levy, and creates a lien in equity upon the effects of the judgment debtor, and every species of property belonging to [the debtor] may be reached and applied to the satisfaction of his debts." Bragg v. Gaynor, 85 Wis. 468, 486, 55 N.W. 919 (1893) (emphasis added).[4] See also In re Milburn, 59 Wis. 24, *378 34, 17 N.W. 965 (1883) (service of the notice of the supplementary proceeding "operates as an equitable levy and creates a lien in equity ...").
¶ 76. Without discussion or explanation, the majority opinion ignores case law describing service of notice of a supplementary proceeding as an "equitable levy."
¶ 77. Fourth, the majority opinion appears to conflict with various statutes. Contrary to the majority opinion, a judgment creditor need not always docket the judgment to obtain a lien and priority on non-exempt personal property of the debtor.[5]
¶ 78. For example, a judgment creditor may, without docketing the judgment, obtain a lien on a debtor's property by use of garnishment. On service of the garnishment complaint, the garnishment lien has priority. Wis. Stat. § 812.18.[6] A garnishee is liable as to debts due "or to become due" at the time of service of the garnishment summons and complaint.[7]
¶ 79. The court has spoken of garnishment as an equitable levy upon the property of the debtor in the hands of the garnishee, just as it has spoken of service of notice of a supplementary proceeding as operating as an equitable levy. Bragg, 85 Wis. at 486.
*379 ¶ 80. Fifth, the majority opinion voices concern about "blanket liens" over a debtor's non-exempt personal property.[8] I agree that issues exist regarding the scope of a judgment creditor's common-law equitable lien on a debtor's non-exempt personal property, including a lien on after-acquired property. By eliminating the lien entirely, the majority opinion does not tackle the more nuanced issues involving the scope of the common-law equitable lien created by notice of supplementary proceedings, an issue raised by the parties in the instant case.
¶ 81. Sixth, by subverting the longstanding rule on a judgment creditor's common-law equitable lien, the majority opinion ignores the policy of this court to promote predictability, efficiency, and uniformity in commercial transactions. The majority opinion does not consider whether it should "sunburst" its opinion to maintain the predictability and efficiency of the law governing economic transactions.[9]
¶ 82. Accordingly, I dissent.
*380 I
¶ 83. I begin by discussing the case law on a judgment creditor's common-law equitable lien in supplementary proceedings.
¶ 84. Since the early days of statehood, our statutes and case law have recognized that when a judgment creditor properly serves notice upon a debtor of a supplementary proceeding to identify property to satisfy its judgment, the judgment creditor obtains a common-law equitable lien on the debtor's property.[10]
¶ 85. The judgment creditor's common-law equitable lien has a long robust history in our state. It can be traced to the creditor's bill in equity. In 1856 the Wisconsin legislature adopted the precursor to chapter 816 of the Wisconsin Statute governing supplementary proceedings[11] "with the intent to substitute supplementary proceedings for the relief formerly obtainable in equity by a creditor's bill."[12] The supplementary proceedings are the "statutory equivalent of a creditor's bill *381 in equity at common law and follow essentially the same rules of law."[13]
¶ 86. The court has routinely used the common-law principles of the creditor's bill in equity to interpret the supplementary proceedings statutes. A supplementary proceeding, the court declared, "is a substitute for a creditor's bill in equity, and is governed by the same rules of law in respect to the rights and priorities of parties affected by the proceeding which control the equitable action. . . . [T]he creditor who, after filing his bill, obtained the first service of the subpoena upon the judgment debtor, thereby obtained a prior lien upon the equitable assets of such debtor."[14]
¶ 87. The creditor's bill in equity existed as a remedy at equity for creditors when no remedy at law existed.[15] The creditor's bill in equity arose to address the problem of judgment creditors of debtors who had died. At common law, the debtor's property at death no longer belonged to the debtor for purposes of execution; the property instead belonged to the debtor's heirs and assigns.[16] The creditor's bill in equity allowed the *382 creditor to reach the assets of the deceased debtor by providing a separate action for the creditor against the estate, heirs, or assigns of the deceased debtor.
¶ 88. Additionally, the creditor's bill in equity provided an equitable remedy if a judgment debtor concealed assets from the debtor and the sheriff was forced to return with an execution unsatisfied, leaving the creditor with no remedy at law to satisfy his or her judgment.[17]
¶ 89. The common-law lien functioned as an "equitable levy" precisely because the property could not be levied on at law.[18] The majority opinion gets it backwards when it rules that service of notice of a supplementary proceeding cannot constitute a lien and that a judgment creditor must levy on the property in order to establish a lien and priority.[19] Rather, the purpose of the supplementary proceeding was to allow a judgment creditor to obtain a superior lien, without meeting the statutory requirements of execution or other levy at law.
¶ 90. Our longstanding case law teaches that a judgment creditor's service of notice upon the debtor of the supplementary proceeding creates a judgment creditor's lien against the non-exempt personal property of the debtor. "[T]he filing of the bill and a bona fide *383 attempt to serve the subpoena give the complainant priority of right to the equitable assets of the judgment debtor . . . ."[20]
¶ 91. The rule that a lien superior to other creditors is created from the time of the judgment creditor's service of notice of the supplementary proceeding upon the debtor has been continuously reiterated and reinforced by this court.[21]
¶ 92. In In re Milburn, 59 Wis. 24, 34, 17 N.W. 965 (1883), the court stated that the service of the notice of the supplementary proceeding "operates as an equitable levy, and creates a lien in equity upon the effects of the judgment debtor":
As in a creditor's bill, so in supplementary proceedings: the commencement of them by the service of process or notice operates as an equitable levy, and creates a lien in equity upon the effects of the judgment debtor, and every piece of property belonging to him may be reached and applied to the satisfaction of his debts.
¶ 93. The Milburn holding is echoed in later cases. In Bragg, 85 Wis. at 486, the court cited Milburn and reiterated that service of process or notice of the supplementary proceeding serves as an equitable levy on all a judgment debtor's property and creates a lien in equity on the judgment debtor's property:
*384 When commenced by service of process or notice, [the supplementary proceeding] operates as an equitable levy, and creates a lien in equity upon the effects of the judgment debtor, and every species of property belonging to him may be reached and applied to the satisfaction of his debts.
¶ 94. Kellogg v. Coller, 47 Wis. 649, 3 N.W. 433 (1879), is also instructive. The majority opinion cites Kellogg approvingly but views the case as establishing the rule that a lien's perfection requires "the appointment of a receiver, who then applied the debtor's specified personal property to the judgment debt." Majority op., ¶ 33.[22]
¶ 95. The majority opinion's commentary on Kellogg is contrary to the facts and reasoning of Kellogg.
¶ 96. In Kellogg, two judgment creditors attempted to satisfy their judgments against a debtor. The first creditor, Kellogg, obtained an order of a supplementary proceeding and served the order upon the debtor. Due to a scrivener's error, the affidavit of the sheriff was defective and service of notice of the supplementary proceeding was not completed. Thus, Kellogg did not appoint a receiver, secure a turnover order, or identify specific property of the debtor.
¶ 97. The second creditor, Coller, instituted supplementary proceedings against the debtor and served the debtor with notice of the proceeding. The debtor appeared and disclosed a life insurance policy. Subsequently, the court commissioner appointed a receiver for the assets of the debtor identified at the *385 hearing. The debtor then assigned all his non-exempt personal property to the receiver.
¶ 98. The first creditor had a receiver appointed after the second creditor's receiver took possession of the property of the debtor.
¶ 99. The first creditor completed none of the majority opinion's requirements for obtaining priority on the debtor's property: no statutory levy, no execution, no receiver, no specification or identification of property before the second creditor acted. The second creditor in Kellogg completed all of the majority opinion's requirements for obtaining priority on the debtor's property prior to the first creditor: she had identified specific property; a receiver had been appointed and turnover required; and the debtor's property was properly executed against.
¶ 100. If the majority opinion's interpretation of Kellogg were correct, that a creditor cannot obtain a lien on the debtor's personal property by mere service of notice of a supplementary proceeding, the first creditor should have lost.
¶ 101. Yet in Kellogg, the first creditor won. The Kellogg court explicitly rejected the reasoning the majority opinion adopts in the present case. The Kellogg court stated:
As in a creditor's suit the filing of the bill and a bona fide attempt to serve the subpoena give [the first creditor] priority of right to the equitable assets of the judgment debtor, so, under the circumstances of this case, the bona fide attempt to serve the order issued by the commissioner at the instance of [the first creditor] must be held to confer upon them like priority of right over [the second creditor], although the order obtained by her was served before service of [the first creditor's] order was perfected.
Kellogg, 47 Wis. at 656 (emphasis added).
*386 ¶ 102. In other words, the Kellogg court gave priority over the debtor's personal property to the first creditor, based on the first creditor's bona fide attempt to serve the debtor in the supplementary proceeding. It determined that the second creditor's "proceeding is inoperative to give her a prior lien on the equitable assets of the judgment debtor." Kellogg, 47 Wis. at 657.
¶ 103. The longstanding rule that the perfection of the creditor's lien depends on "first service of the subpoena upon the judgment debtor" was applied in Kellogg to "give the complainant priority of right to the equitable assets of the judgment debtor." Kellogg, 47 Wis. at 656.
¶ 104. Kellogg stands in direct contradiction of the majority opinion's assertion that "service of an order to appear for supplemental proceedings will not create an interest that is superior to the interest of a docketed judgment creditor who has levied specific personal property of the debtor." Majority op., ¶ 48. Under Kellogg, service of notice of supplementary proceedings creates a superior interest in a judgment debtor's property.
¶ 105. The court has interpreted Kellogg as I do. In Candee v. Egan, 84 Wis. 2d 348, 360, 267 N.W.2d 890 (1978), the court, citing Kellogg, reiterated that "[a] judgment creditor who first begins supplementary proceedings against a particular judgment debtor obtains an equitable lien upon the debtor's nonexempt property that is prior to the equitable lien of a judgment creditor who commences a supplementary proceeding thereafter."[23]
*387 ¶ 106. The same rule of law was confirmed in In re Badger Lines, Inc., 224 Wis. 2d 646, 590 N.W.2d 270 (1999). The court stated that it is service of notice of the supplementary proceeding upon the debtor by which a judgment creditor perfects a common-law equitable lien on the non-exempt personal property of the debtor. Badger Lines, 224 Wis. 2d at 658.
¶ 107. I now examine Badger Lines.
II
¶ 108. The majority opinion contorts and distorts Badger Lines to reach its result, changing the baseline rule that Badger Lines reiterated and upon which debtors and creditors have relied.
¶ 109. The question in Badger Lines was presented to this court by the federal Seventh Circuit Court of Appeals as a question of state law necessary to resolve a federal bankruptcy case.[24] The following is a rough timeline of the events in Badger Lines:
• October 18, 1991: A judgment of $82,120.26 was entered in favor of Emerald Industrial Leasing Corporation against Badger Lines, Inc. for services rendered and unpaid.
• October 21, 1991: Emerald Industrial's judgment was docketed.
• October 30,1991: Emerald Industrial served Badger Lines with an order directing it to appear at a supplementary hearing pursuant to Wis. Stat. § 816.03 and enjoining Badger Lines from transferring its assets.
*388 • December 17, 1991: The court commissioner appointed a supplementary receiver on behalf of Emerald Industrial; issued a "turnover" order that instructed Badger Lines to turn over its assets; and enjoined Badger Lines from transferring its assets.
• February 11, 1992: Badger Lines filed for Chapter 7 bankruptcy in the Bankruptcy Court for the Eastern District of Wisconsin.
• March 1992: The receiver filed a proof of claim in bankruptcy asserting a receiver's lien on behalf of the Emerald Industrial.
• April 1995: The Chapter 7 trustee issued a final report distributing the remaining assets of Badger Lines; the receiver and Emerald Industrial were treated as unsecured creditors.
¶ 110. The federal bankruptcy and district courts had determined that Emerald Industrial had a common-law equitable lien on the debtor's property.[25] Thus, the federal court asked: "Does Wisconsin law require that a lien obtained by a judgment creditor who institutes supplementary proceedings under Wis. Stat. § 816.04 be perfected, and if so, how is the lien to be perfected?"[26]
¶ 111. The key dispute in the case was whether any additional action besides notice to the debtor was required to perfect Emerald Industrial's common-law equitable lien on Badger Lines' assets. Emerald Indus *389 trial argued that perfection of its lien on Badger Lines' assets occurred upon service of notice to Badger Lines of the supplementary proceeding. The bankruptcy trustee argued, however, that perfection of the lien was accomplished either by the appointment of a receiver or the issuance of a turnover order.[27]
¶ 112. If Emerald Industrial were correct and service of notice of the supplementary proceeding provided perfection of the lien, then it would have priority over other creditors. If the bankruptcy trustee were correct and Emerald Industrial needed to take steps in addition to service of notice, then Emerald Industrial's lien would have been perfected within the 90-day preference period in bankruptcy and could be avoided.
¶ 113. When Badger Lines was served with notice of the supplementary proceeding, the judgment creditor did not know what property Badger Lines held. The "specific personal property" of Badger Lines was not identified until December 17, 1991, when the turnover order was issued.
¶ 114. Nevertheless, the Badger Lines court held that Emerald Industrial obtained and perfected an equitable lien on October 30, 1991, the date of its service of notice of the supplementary proceedings.
¶ 115. The Badger Lines court explicitly rejected the bankruptcy trustee's argument that appointment of a receiver or a turnover order were necessaiy to perfect a judgment creditor's common-law equitable lien on the defendant's property:
[Requiring an additional step beyond service in order to obtain a superior lien removes any incentive for negotiation and settlement between the creditor and *390 the debtor..... Such imposed protraction benefits no one, wastes the parties' time and money, and burdens the courts with potentially unnecessary hearings and proceedings.
Badger Lines, 224 Wis. 2d at 660.[28]
¶ 116. Badger Lines concluded that nothing in addition to service of notice to the debtor of a supplementary hearing was required to perfect Emerald Industrial's common-law equitable lien over Badger Lines' personal property: "Wisconsin law does not require a creditor to take additional steps to perfect a receiver's lien beyond service on the debtor."[29]
¶ 117. Although the majority opinion frequently cites to Attorney Pasch's treatise on collection law in Wisconsin,[30] the majority opinion conveniently fails to reveal that Attorney Pasch disagrees with the majority opinion's characterization of Badger Lines. Pasch explains Badger Lines as I do:
The Wisconsin Supreme Court, In re Badger Lines, Inc., 224 Wis. 2d 646, 590 N.W.2d 270 (1999), held that service upon the debtor of an order to appear at a supplemental examination under Chapter 816 establishes at the time of service a lien in favor of the creditor without requiring the creditor to take additional steps to perfect the lien. The court determined that a creditor who initiates a supplemental proceeding in Chapter 816 must not do anything more than serve the debtor with notice to appear at the supplemental examination so as to obtain a superior lien that cannot be overcome by another creditor. The court rejected arguments that, to avoid a secret lien, some additional action should be required of a judgment creditor. The court also rejected *391 arguments that the lien should not arise until a supplemental receiver is appointed or the court issues a turnover order as to the debtor's assets; the court held that the lien arises at an earlier stage, when the judgment debtor is served with the order to appear at the supplemental examination. See Holton v. Burton, 78 Wis. 321, 47 N.W. 624 (1890). Although the Badger Lines case references the lien as a "receiver's lien," the decision appears to have broader application to the lien of a judgment creditor pursuing supplemental proceedings.
Pasch, supra note 6, § 16:13 at 330-31 (emphasis added).
¶ 118. Unlike Pasch, the majority opinion resurrects and adopts the losing party's argument in Badger Lines, while professing to follow the holding of Badger Lines.[31]
¶ 119. Thus, the majority opinion blithely overturns Badger Lines and 150 years of Wisconsin jurisprudence, leaving creditors and debtors unsure of their rights. I cannot join such an undertaking.
¶ 120. For the foregoing reasons, I dissent.
¶ 121. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

 According to the majority opinion, a lien on a judgment debtor's non-exempt personal property turns on the judgment creditor's "levying" on non-exempt personal property after identifying the property and docketing the judgment. Majority op., ¶ 3.
Docketing the judgment is mentioned in only one place in chapter 815, entitled "Execution": Section 815.05(1g)(a)6. provides that the execution "shall intelligibly refer to the judgment stating," inter alia, "the time of entry in the judgment and lien docket in the county to which the execution is issued."
With regard to execution, Wis. Stat. § 806.06(4) provides that "[n]o execution shall issue until the judgment is perfected or until the expiration of the time for perfection." (emphasis *375 added). A judgment is perfected "by the taxation of costs and the insertion of the amount thereof in the judgment." Wis. Stat. § 806.06(1)(c). Perfection does not relate to docketing.
Furthermore, Wis. Stat. § 815.04(1)(a) permits execution to issue "within 5 years of the rendition of the judgment. Section 806.06(1)(a) provides that "[a] judgment is rendered by the court when it is signed by the judge or by the clerk at the judge's written direction" (emphasis added).
The circuit court and court of appeals do not always use the words "perfecting" a judgment, "entering" a judgment, and "docketing" a judgment as these words are used in the statutes.

 The Petition for Review states the issue as follows: "Is a creditor's right to obtain a common law Creditor's/Receiver's Lien against a judgment debtor's personal property conditioned upon docketing the judgment in the Judgment and Lien Docket under Wis. Stat. § 806.10(1)?"
The circuit court concluded, and the court of appeals affirmed, that docketing the judgment was a prerequisite for a common-law creditor's lien. See majority op., ¶ 19.

 See Attorney's Title Guaranty Fund v. Town Bank, 2014 WI 63, 355 Wis. 2d 229, 850 N.W.2d 28 (a judgment creditor acted under the assumption that a common-law equitable lien existed on the judgment debtor's property).

 See also Candee v. Egan, 84 Wis. 2d 348, 360, 267 N.W.2d 890 (1978) (service of notice of the supplementary proceeding serves as an equitable levy on the unknown property of the *378 debtor "to preserve the debtor's nonexempt property for the benefit of the specific judgment creditors . . . .").

 Liens may be perfected in many different ways. The manner in which a lien is perfected depends on both the type of lien asserted, e.g., a judgment lien, a statutory lien, an equitable lien, and the type of property against which the lien is asserted, e.g., real or personal.

 See also Robert A. Pasch, 12 Wisconsin Practice Series: Wisconsin Collection Law § 17:15, at 349 (2d ed. 2006).

 Wis. Stat. § 812.18.

 See majority op., ¶¶ 3, 20, 51, 52-55.

 The decision to apply a new rule of law only prospectively, or to "sunburst" the new rule of law, is driven hy our attempt to alleviate the unsettling effects of a party justifiably relying on a contrary view of the law. [State ex rel. Buswell v. Tomah Area Sch. Dist., 2007 WI 71, ¶ 46, 301 Wis. 2d 178, 732 N.W.2d 804], Accordingly, in determining whether to apply a new rule of law prospectively instead of retrospectively, we consider three factors: (1) whether our holding establishes a new rule of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression, the resolution of which was not clearly foreshadowed; (2) whether retroactive application would further or impede the operation of the new rule; and (3) whether retroactive application could produce substantial inequitable results. Id., ¶ 47; see also [Kurtz v. City of Waukesha, 91 Wis. 2d 103, 109, 280 N.W.2d 757 (1979)]. *380 Heritage Farms, Inc. v. Market Ins. Co., 2012 WI 26, ¶ 45, 339 Wis. 2d 125, 810 N.W.2d 465 (footnote omitted).

 See, e.g., Kellogg v. Coller, 47 Wis. 649, 656 (1879); In re Milburn, 59 Wis. 24, 17 N.W. 965 (1883); Bragg v. Gaynor, 85 Wis. 468, 486, 55 N.W. 919 (1893); In re Badger Lines, Inc., 224 Wis. 2d 646, 654 (citing Candee, 84 Wis. 2d at 360).
Wisconsin creditors and debtors, including both parties in the instant case, point to the judgment creditor's common-law equitable lien on a debtor's property created by a subpoena or notice to appear at a supplementary hearing. See Brief of Intervening Defendant-Appellant at 31-39; Brief of the Co-Plaintiff-Respondent at 16.

 Ch. 120, §§ 200-213, Laws of 1856.

 Robert S. Moss, Supplementary Proceedings in Wisconsin, 23 Marq. L. Rev. 49, 49 (1939). Moss urged clarification of the principles and practices governing supplementary proceedings. 23 Marq. L. Rev. at 58.

 In re Badger Lines, Inc., 224 Wis. 2d 646, 654, 590 N.W.2d 270 (1999).
If a lien existed at common law, the mere existence of other lien statutes does not abrogate the common-law lien. Moynihan Associates, Inc. v. Hanisch, 56 Wis. 2d 185, 190, 201 N.W.2d 534 (1972).

 Kellogg v. Coller, 47 Wis. 649, 655-56 (1879).

 Robert S. Moss, Supplementary Proceedings in Wisconsin, 23 Marq. L. Rev. 49, 50 (1939).
For an extensive discussion of the creditor's bill in equity, see C.C. Langdell, A Brief Survey of Equity Jurisdiction, Part VI, 4 Harv. L. Rev. 99 (1890).

 At common law, when the debtor died, the creditor was unable to execute on the debtor's property. Langdell, supra note 15, at 119.

 As in the creditor's bill, an appeal was made to the conscience of the defendant to discover upon oath whether he had property covered up or concealed beyond the reach of an execution, so in this proceeding, the judgment debtor is required to state, under oath, whether he has not property somewhere concealed, which should be applied in payment of his debts.
In re Remington, 7 Wis. 541, 548 (1858).

 Langdell, supra note 15, at 109-118).

 Majority op., ¶ 3.

 Kellogg v. Coller, 47 Wis. 649, 655, 3 N.W. 433 (1879).

 The majority opinion at ¶ 40 relies on Knox v. Webster, 18 Wis. 426 (1864), for the rule that "[plersonal property shall be bound from the time of its seizure on execution." This declarative statement is true, but it does not mean that seizure is always necessary to create a lien. The Knox case dealt with two creditors who attempted to seize the same property. The court held that executions should be levied according to the order in which the sheriff received the executions.

 The summary set forth in the majority opinion at ¶ 33 does not appear in the text of Kellogg v. Coller, 47 Wis. 649, 656, 3 N.W. 433 (1879).

 Citing Candee, 84 Wis. 2d at 360, and Alexander v. Wald, 231 Wis. 550, 286 N.W. 6 (1939), Robert Pasch writes: "[A] judgment creditor who first begins a supplementary proceeding against a debtor obtains an equitable lien on the debtor's non-exempt property that is senior to any judgment creditor *387 who subsequently commences a supplementary proceeding." Pasch, supra note 6, § 16:13, at 329. See also Pasch, supra note 6, § 17:15, at 349.

 See Matter of Badger Lines, Inc., 140 F.3d 691 (7th Cir. 1998) (certifying a question of Wisconsin state law for resolution by the Wisconsin Supreme Court).

 See In re Badger Lines, Inc., 199 B.R. 934, 937-38 (Bankr. E.D. Wis. 1996) (recognizing the existence of the lien created by supplementary proceedings); In re Badger Lines, Inc., 1996 WL 33364962 (E.D. Wis. Mar. 14, 1996) (treating the common-law lien as already in existence and ruling only on the question of perfection of the lien).

 Matter of Badger Lines, Inc., 140 F.3d 691, 699 (7th Cir. 1998).

 In re Badger Lines, 224 Wis. 2d 646, 652, 590 N.W.2d 270 (1999).

 Id. at 660.

 Id. at 661 (emphasis added).

 See, e.g., majority op., ¶¶ 24, 28.

 The majority opinion asserts that in Badger Lines, the court held that "liens arise in specifically identified, non-exempt personal property when that property is levied." Majority op., ¶ 44. This is flatly wrong. In Badger Lines, the creditor Emerald Industrial had no knowledge of Badger's assets at the time it served notice upon Badger of the supplementary proceeding, but it nonetheless perfected its lien. Additionally, the Badger Lines court specifically refused to comment on the issue of levy (to the extent that "levy" means possession of the property). Badger Lines, 224 Wis. 2d at 658 n.5.