Chuck BELKE, Plaintiff-Appellant,

v.

M & I FIRST NATIONAL BANK OF STEVENS POINT,
Defendant-Respondent.

Court of Appeals

*No. 93–1136. Submitted on briefs February 2, 1994.—Decided
November 23, 1994.*

(Also reported in 525 N.W.2d 737.)

For the plaintiff-appellant the cause was submitted on the brief of *Alan A. Panek* of *Crowns, Midthun, Metcalf & Quinn, S.C.* of Wisconsin Rapids.

For the defendant-respondent the cause was submitted on the brief of *Robert F. Konkol* of *Anderson, Shannon, O'Brien, Rice & Bertz* of Stevens Point.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J.  Chuck Belke claims perfected security interests in two certificates M & I First National Bank issued to Irene Tepp. He appeals from a judgment dismissing his action against the bank to realize on his security interests. The certificates provide that they may not be transferred or assigned without the bank's consent. The trial court held that because the bank did not consent to Tepp's granting security interests in the certificates, no security interest attached. It concluded the bank properly exercised its right of setoff, granted the bank's motion for summary judgment and dismissed Belke's action. We reverse.

The material facts are stipulated. Tepp borrowed from the bank in May 1988. To secure the debt, the bank required her to sign a security agreement which granted the bank a security interest in, among other things, all instruments she then owned or later acquired. Three days later, the bank filed its financing statement with the secretary of state's office. In May 1989, Tepp purchased two $10,000 certificates from the

386

bank. The bank did not take possession of the certificates. Each certificate provides: "You cannot transfer or assign this certificate or any rights under it without our written consent."

On August 28, 1990, Tepp signed a $40,000 promissory note, a security agreement and a financing statement in favor of Belke, and for collateral she delivered to him the two certificates. The bank did not consent to that transaction. The security agreement granted Belke a security interest in, among other things, all instruments she then owned. Belke filed the financing statement with the secretary of state's office on September 5, 1990.

Tepp subsequently defaulted on her obligations to the bank and Belke. The bank set off the proceeds of the two certificates against Tepp's debt to it and then refused to honor Belke's demand for payment on the certificates. Belke sued the bank, claiming that he is entitled to the certificate proceeds. He contended that the certificates are instruments, he possesses a perfected security interest in them and as the secured party he has priority over the setoff claimant, the bank.[1] The trial court held that the certificates are instruments but the restriction against their transfer and assignment prevented Belke's security interest from attaching.

---

[1] With exceptions not pertinent here, a security interest in an instrument is perfected only by the secured party's taking possession, not by filing at the secretary of state's office. Section 409.304(1), STATS., [U.C.C. § 9-304(1)]. "As long as the security interest is perfected and attached prior to an attempted setoff, priority is to be given to the perfected security interest over a subsequent attempted setoff by the depository bank." *First Wis. Nat'l Bank v. Midland Nat'l Bank,* 76 Wis. 2d 662, 670, 251 N.W.2d 829, 833 (1977).

Secured transactions are governed by ch. 409, STATS., "Uniform Commercial Code—Secured Transactions," also referred to as Article 9. We start our analysis with § 409.102, STATS., [Wisconsin's version of U.C.C. § 9-102], which provides in part:

(1)   Except as otherwise provided in s. 409.104 on excluded transactions, this chapter applies:

(a)   To any transaction . . . which is intended to create a security interest in personal property . . . including . . . instruments . . . .

Section 409.104, STATS., contains no applicable exclusion. It is undisputed that the certificates are personal property and that Tepp and Belke intended to create a security interest in them.

The trial court concluded that the certificates are instruments under § 409.105(1)(i), STATS., [U.C.C. § 9-105(1)(i)]. That section provides in part:

"Instrument" means a negotiable instrument as defined in s. 403.104 . . . or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment.

*Id.* Because the bank does not question the trial court's holding that the certificates are instruments, we do not decide whether they are properly classified as such. Article 9 applies. Section § 409.102(1)(a), STATS., [U.C.C. § 9-102(1)(a)].

We turn to whether Belke acquired an enforceable security interest in the certificates. A security interest "is not enforceable against the debtor or 3rd parties

388

with respect to the collateral and does not attach"[2] unless (a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement containing a description of the collateral; (b) value has been given; and (c) "the debtor has rights in the collateral."[3] Section 409.203(1), STATS., [U.C.C. § 9-203(1)]. It is undisputed that the certificates are in Belke's possession pursuant to agreement, the debtor, Tepp, signed a security agreement in his favor, and he gave value for them. The question is whether Tepp had rights in the collateral. We conclude that she did.

Tepp had substantial and valuable rights under each certificate: to payment of principal plus interest upon presentation and delivery to the bank at the maturity date, to payment before maturity with a penalty, and to transfer with the bank's consent.

Article 9 of the U.C.C. does not define "rights in the collateral." The bank contends that rights in the collateral means *sufficient* rights in the collateral, and because Tepp did not have an interest in the certificates transferrable without the bank's consent, she lacked *sufficient* rights in the collateral to which Belke's security interest could attach.

We would accept the bank's contention, but for the fact that we deal with a provision in the U.C.C. As an

[2] For an explanation of "attach," *see In re Return of Property in State v. Pippin*, 176 Wis. 2d 418, 427-28 n.5, 500 N.W.2d 407, 410 (Ct. App. 1993).

[3] Because the transaction in *Pippin* involved a sale, we looked to ch. 402, STATS., Article 2 of the U.C.C., to determine whether the debtor had such rights. *In re Return of Property in State v. Pippin*, 176 Wis. 2d 418, 428, 500 N.W.2d 407, 411 (Ct. App. 1993). Tepp's transaction with Belke is not covered by Article 2 because it is not a sale.

original proposition, the transferability of the rights sought to be attached is, in our view, implicit in the concept of a security interest. For if the rights are not transferable, the creditor has nothing to apply toward its debt when it attempts to reach the collateral. Indeed, the creation of a security interest implies transferability of the debtor's rights in the collateral. Section 409.311, STATS., [U.C.C. § 9-311], provides in relevant part: "The debtor's rights in collateral may be voluntarily or involuntarily *transferred* (by way of . . . *creation* of a security interest . . . ) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default."[4] (Emphasis added.)

However, the underlying purposes and policies of the U.C.C. include "to make uniform the law among the various jurisdictions." Section 401.102(2)(c), STATS., [U.C.C. § 1-102(2)(c)]. We have found no jurisdiction that has held that transferability of an interest is necessary for a security interest to attach. Several jurisdictions have assumed without discussion that a creditor's security interest attached notwithstanding a prohibition in the certificate against its transfer. *Citizens Nat'l Bank v. Bornstein*, 374 So. 2d 6, 10 (Fla. 1979); *Bank of Winter Park v. Resolution Trust Corp.*, 633 So. 2d 53, 54-55 (Fla. Dist. Ct. App. 1994); *Republican Valley Bank v. Security State Bank*, 426 N.W.2d 529, 532 (Neb. 1988); and *Kalk v. Security Pac. Bank Wash. NA*, 866 P.2d 1276, 1280 (Wash. Ct. App.), *review granted*, 881 P.2d 253 (Wash. 1994). A decision by us to the contrary would inject uncertainty in the application of a uniform law. Moreover it would be sub-

---

[4] Here, of course, the prohibition against transfer is part of the collateral itself and is not a provision in the security agreement.

ject to the criticism that we modified a uniform law by adding the word "sufficient" to the "rights in the collateral" requirement in U.C.C. § 9-203(1)(c).

Consequently, we conclude that Belke's security interest attached to the certificates, notwithstanding the provision in the certificates that they may not be transferred or assigned without the bank's consent and the bank's lack of consent.

We therefore reverse the judgment dismissing Belke's action and remand for further proceedings on his complaint.[5]

*By the Court.*—Judgment reversed and cause remanded with instructions.

---

[5] The priority of Belke's security interest as against the bank's right to setoff is for the trial court.