# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2774 |
| COMPLETE TITLE: | Attorney's Title Guaranty Fund, Inc., |
| | Plaintiff, |
| | v. |
| | Town Bank, |
| | Defendant-Respondent, |
| | Heartland Wisconsin Corp., |
| | Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 345 Wis. 2d 705, 827 N.W.2d 116
(Ct. App. 2013 – Published)
PDC No: 2013 WI App 6

| | |
|---|---|
| OPINION FILED: | July 15, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 25, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | J. Mac Davis |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) |
| | BRADLEY, J., ABRAHAMSON, C.J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *David H. Hutchinson* and *Hutchinson Law Office*, New Berlin, and oral argument by *David H. Hutchinson*.


For the defendant-respondent, there was a brief by *David I. Cisar*, *Peter F. Mullaney*, and *von Briesen & Roper, S.C.*, Milwaukee, and oral argument by *David I. Cisar*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2011AP2774
(L.C. No.   2011CV440)

STATE OF WISCONSIN                    :          IN SUPREME COURT

Attorney's Title Guaranty Fund, Inc.,

      Plaintiff,

  v.

Town Bank,

      Defendant-Respondent,

Heartland Wisconsin Corp.,

      Defendant-Appellant-Petitioner.

**FILED**

**JUL 15, 2014**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals.  *Reversed.*

¶1    PATIENCE DRAKE ROGGENSACK, J.    We review a decision of the court of appeals[1] affirming an order of the circuit court[2] granting summary judgment to defendant Town Bank.  This case is a priority battle between defendants Heartland Wisconsin Corp. and Town Bank for proceeds of a debtor's legal malpractice claim

---

[1] Attorney's Title Guar. Fund, Inc. v. Town Bank, 2013 WI App 6, 345 Wis. 2d 705, 827 N.W.2d 116.

[2] The Honorable J. Mac Davis of Waukesha County presided.

that plaintiff Attorney's Title Guaranty Fund, Inc. held in escrow pending resolution of their dispute.

¶2 Town Bank claims that it is entitled to the proceeds because proceeds from legal malpractice claims are not assignable; therefore, Heartland, who claims its interest by assignment of proceeds, has no protectable interest. Town Bank also claims that if proceeds are assignable, it perfected a common law creditor's lien on all of the debtor's personal property, no matter when acquired, by serving the debtor with an order to appear at supplemental proceedings.

¶3 Heartland disputes Town Bank's claims. First, Heartland contends that the debtor validly assigned the proceeds of his legal malpractice claim, which gave Heartland a security interest in those proceeds that is superior to Town Bank's interest as an unsecured judgment creditor. Second, Heartland argues that a common law judgment creditor's lien does not attach to property the debtor acquires after a supplemental examination.

¶4 We conclude that (1) the debtor lawfully assigned the potential proceeds from his legal malpractice claim as collateral for a contemporaneously incurred debt to Heartland; and (2) Heartland is entitled to the proceeds because it perfected a security interest in them before Town Bank obtained a superior interest by levy. See Associated Bank N.A. v. Collier, 2014 WI 62, ¶3, __ Wis. 2d __, __ N.W.2d __ (a judgment creditor with a docketed money judgment obtains a superior interest in a debtor's non-exempt personal property when it

2

levies specifically identified property). In reaching this conclusion, we note that Heartland lent money to the debtor. In consideration for the loan, Heartland took a security interest in the potential proceeds of the debtor's malpractice claim. This allowed Heartland to access the debtor's property in a way that Town Bank could not. Heartland filed a financing statement for its security interest in the proceeds of the malpractice claim before the proceeds came into existence. Therefore, the moment the debtor acquired proceeds from his claim, Heartland's interest became superior to that of other creditors, including Town Bank, who had not levied the proceeds.

## I. BACKGROUND

¶5 Defendants in the present case are creditors of Timothy Brophy, a Milwaukee real estate investor and landlord. Brophy has been involved in multiple lawsuits, including a class action brought by tenants of certain rental properties, a bankruptcy proceeding, and a malpractice claim against his former attorney, all three of which provide factual underpinnings of the present case. The narrow issue in this case, however, is one of priority between a judgment creditor and a Wis. Stat. ch. 409 secured creditor.

¶6 Town Bank became a judgment creditor of Brophy in an action that included mortgage foreclosures of certain Milwaukee properties. On February 13, 2006, Town Bank obtained and docketed a judgment for $1,690,870. It pursued collection by several means. First, it foreclosed on real estate and applied the proceeds from the sale of those properties to the judgment,

leaving a $224,774.40 deficiency. Next, on February 15, 2006, it obtained an order requiring Brophy to appear at supplemental proceedings. It served Brophy with that order two days later. Brophy appeared and revealed his assets, which at that time did not include a filed malpractice claim, the proceeds of which underlie this suit. Town Bank's supplemental receiver was dismissed September 11, 2006.

¶7 In June and July 2007, Brophy obtained two loans totaling $222,539 from Heartland. Brophy used the money Heartland provided to settle a class action lawsuit pending against him. As security for these loans, Brophy assigned Heartland his interest in potential proceeds from his malpractice claim against his former attorney, Harvey Goldstein. Brophy defaulted on the loans Heartland made and, on August 17, 2007, he filed for bankruptcy.

¶8 Town Bank learned of Brophy's malpractice claim and Heartland's interest in the proceeds during Brophy's bankruptcy proceedings. On April 4, 2008, Town Bank filed a proof of claim in the bankruptcy asserting that it had a "Judgment Lien on all Real Estate; Receiver's Lien on all Real and Personal Property of Debtor."

¶9 On January 23, 2009, Brophy's bankruptcy was dismissed without a confirmed plan. Heartland filed a financing statement for its security interest in the proceeds that same day.

¶10 On August 3, 2009, Town Bank moved the circuit court to appoint a supplementary receiver and to grant that receiver

4

authority to proceed on Brophy's malpractice claim. The circuit court did not rule on Town Bank's motion.

¶11 On September 9, 2009, Brophy settled his malpractice lawsuit. Pursuant to an agreement among the parties to this suit, Attorney's Title placed the proceeds from the settlement in escrow. On February 3, 2011, Attorney's Title filed suit to determine whether Town Bank or Heartland has a superior interest in the proceeds of Brophy's malpractice claim.

¶12 Town Bank moved for summary judgment, which the circuit court granted. Heartland appealed, and the court of appeals affirmed. We accepted Heartland's petition for review, and asked for additional briefing on two issues: (1) whether the potential proceeds from a legal malpractice claim can be lawfully assigned as security for a contemporaneously incurred debt; and (2) whether such proceeds were future property at the time of the 2006 supplemental examination Town Bank conducted. We now reverse the decision of the court of appeals.

## II. DISCUSSION

### A. Standard of Review

¶13 Town Bank asks us to confirm what it asserts is a judgment creditor's blanket lien on all of Brophy's personal property, no matter when acquired. Heartland asserts it is a secured creditor with respect to the proceeds of the legal malpractice claim and therefore, its interest is superior. "Whether a lien exists and the effect of an alleged lien against third parties are questions of law that we review independently of the court of appeals." Associated Bank, __ Wis. 2d __, ¶21.

5

## B. Introduction

¶14 The conclusion we reached in <u>Associated Bank</u>, __ Wis. 2d __, also released today, underlies part of our decision in the present case. In <u>Associated Bank</u>, we parsed the competing interests of two judgment creditors. <u>Id.</u>, ¶¶51-54. We concluded that supplemental proceedings are a discovery tool in aid of execution, and clarified that a judgment creditor with a docketed money judgment obtains an interest superior to other judgment creditors by levying specifically identified, non-exempt personal property of the debtor. <u>Id.</u>, ¶38. We rejected the notion of a blanket lien on all of a judgment debtor's personal property in favor of the first judgment creditor to serve the debtor with notice to appear at a supplemental examination. <u>Id.</u>, ¶¶28, 38.

¶15 Statutory collection procedures drove our conclusion. If a judgment creditor could encumber all of a debtor's personal property by serving the debtor with an order to appear at supplemental proceedings, statutory collection procedures would be eviscerated. <u>Id.</u>, ¶45. Put another way, the notion of a blanket lien arising due to service of an order to appear at a discovery proceeding is inconsistent with the incremental statutory scheme of judgment debt collection.

¶16 We further explained that a blanket lien would frustrate the policies statutory collection procedures serve. For instance, requiring a debtor to levy specific items of a debtor's personal property ensures that a creditor does not encumber, at the expense of other creditors and the debtor, more

6

property than is necessary to satisfy its judgment. Id., ¶¶47-48. By binding property at the time of levy, statutory collection procedures also provide clear notice to third parties that the debtor no longer has rights in the levied property. Id., ¶49. Finally, the collection statutes reward diligence by allowing competing judgment creditors to simultaneously seek out assets to levy. Id., ¶50.

¶17 We do not repeat our full discussion from Associated Bank. Instead, we apply its holding to the facts of this case. First, however, we conclude that proceeds from legal malpractice claims are assignable as collateral for contemporaneously incurred debt. We then conclude that Heartland, a secured creditor, perfected its security interest in the proceeds of Brophy's malpractice claim before Town Bank obtained a superior interest in those proceeds by levy. In our discussion that follows, we further explain why Heartland was able to access the proceeds in a way that Town Bank was not. And finally, we discuss legislative choices about judgment collection and secured transactions that drive our conclusions.

### C. Assignment of Potential Proceeds

#### 1. Parties' positions

¶18 Town Bank maintains that it is contrary to law to assign potential proceeds from legal malpractice claims. Town Bank grounds this contention in what it asserts is a prohibition against assigning the underlying legal malpractice claim. Town Bank argues that Wisconsin permits assignment of only those claims that survive the death of the claim's owner and legal

malpractice claims are not within that group. It also asserts that such assignment should be prohibited because it would grant the right to control the lawsuit to a stranger to the attorney-client relationship, which is contrary to public policy. Town Bank contends that 18 states prohibit assignments of legal malpractice claims. Town Bank further contends that there is no real distinction between a malpractice claim and its proceeds.

¶19 Not surprisingly, Heartland sees the assignment issue quite differently. It asserts that it lawfully took an assignment of the potential proceeds of Brophy's malpractice claim, which Wis. Stat. ch. 409 specifically permits. It thereby became a secured creditor in regard to a right to payment out of the proceeds, with an interest superior to Town Bank's interest as an unsecured judgment creditor. Heartland also contends that proceeds differ from the claim from which they arise, both in regard to how proceeds are treated in Wis. Stat. ch. 409 and in regard to public policy concerns relating to assignments. Heartland contends that proceeds are payment intangibles under Wis. Stat. § 409.102(1)(p) and Wis. Stat. § 409.109(1)(c) and that malpractice claims are commercial torts under § 409.102(1)(d). Therefore, Heartland asserts that Town Bank's argument misses the mark because it is based on the contention that a malpractice claim is not assignable; while by contrast, Heartland took an assignment only in the potential proceeds as a contractual right to payment, if and when proceeds came into existence.

8

## 2. General principles

¶20 In order to validly assign property rights, those rights must be alienable, i.e., transferrable from their owner. Becker v. Chester, 115 Wis. 90, 110, 91 N.W. 87 (1902). Alienability may be controlled by statute or common law public policy concerns. See id. at 112; Schneider v. Schneider, 132 Wis. 2d 171, 176-77, 389 N.W.2d 835 (Ct. App. 1986).

¶21 In the context of legal malpractice claims, some jurisdictions have refused to allow strangers to the attorney-client relationship to litigate legal malpractice claims, thereby restricting those claims "to only the parties involved." Goodley v. Wank & Wank, Inc., 133 Cal. Rptr. 83, 86 (Cal. Ct. App. 1976); George L. Blum, J.D., Assignability of Claim for Legal Malpractice, 64 A.L.R. 6th 473 (updated 2013).[3] As with assigning a legal malpractice claim, levying such a claim by obtaining a turnover order for the right to litigate the claim to a receiver would result in a stranger to the attorney-client relationship litigating the claim. While we need not decide here if Wisconsin law prohibits assigning claims for legal

---

[3] For arguments in favor of the assignability of legal malpractice claims, see New Hampshire Insurance Co. v. McCann, 707 N.E.2d 332, 335-38 (Mass. 1999). These include a concern that prohibiting the assignment of such claims will be perceived as a self-serving effort by the legal profession to insulate its own from litigation. Michael Sean Quinn, On the Assignment of Legal Malpractice Claims, 37 S. Tex. L. Rev. 1203, 1206 (1996).

9

malpractice, we note potential concerns that some courts have expressed.[4]

### 3. Wisconsin policies

¶22 Town Bank has cited no Wisconsin appellate case or statute that prohibits assignment of potential proceeds of legal malpractice claims. The cases cited by Town Bank speak to when claims survive the death of the claimant. Those cases have no bearing on Wis. Stat. ch. 409 or the assignment issue before us because Heartland does not assert an interest in the malpractice claim.

¶23 In addition, there is a real difference between the claim from which proceeds arise and the proceeds themselves. For example, a malpractice claim involves many choices about whether and how to proceed, while proceeds are a payment intangible, which is simply the right to be paid.[5] In this case,

---

[4] See Anthony J. Sebok, The Inauthentic Claim, 64 Vand. L. Rev. 61, 85 n.106 (2011) (listing the states that do not permit assigning legal malpractice claims); see also Michael Reese, The Use of Legal Malpractice Claims as Security Under the UCC Revised Article 9, 20 Rev. Litig. 529, 532-33 (2001) (explaining that Article 9 permits the use of commercial tort claims, including legal malpractice claims, as collateral and that any restriction on their use is governed by law other than Article 9).

[5] The proceeds of a tort claim are a category of collateral known as a "payment intangible." Official Comment 15 to U.C.C. 9-109(d)(12) ("[O]nce a claim arising in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible and ceases to be a claim arising in tort."). A party may file to perfect its interest in a payment intangible. Official Comment 4 to U.C.C. 9-309(2) (Wis. Stat. § 409.309(2)) ("Any person who regularly takes assignments of any debtor's accounts or payment intangibles should file").

10

it is Brophy's right to be paid in settlement of his legal malpractice suit. See, e.g., Wis. Stat. § 409.102(1)(p); Wis. Stat. § 409.109(1)(c).

¶24 Furthermore, the Wisconsin Legislature adopted the revisions to Article 9 that "clearly contemplate[] that a security interest in the proceeds of a tort claim is conceptually distinct from one in the tort claim itself." Michael Reese, The Use of Legal Malpractice Claims as Security Under the UCC Revised Article 9, 20 Rev. Litig. 529, 532 (2001). We conclude that the legislature set public policy for Wisconsin by those revisions such that public policy does not prohibit the assignment of potential proceeds in a malpractice claim as a payment intangible. Were we to conclude otherwise, we would be contravening the clear meaning of provisions of Wis. Stat. ch. 409 and could be seen as favoring lawyers against whom legal malpractice claims are filed. Having concluded that Brophy's assignment to Heartland is valid, we turn to its effect on third parties.

## D. Priority

¶25 The first creditor to obtain an interest in the proceeds of Brophy's malpractice claim that is superior to other creditors prevails here. The actions that a judgment creditor and a secured creditor must take in order to obtain an interest superior to other creditors, however, are not the same.

¶26 A judgment creditor with a docketed money judgment obtains a superior interest in specifically identified personal property of a judgment debtor by levying that property.

11

<u>Associated Bank</u>, __ Wis. 2d __, ¶38. A judgment creditor does not have a blanket lien on all of the debtor's personal property. A judgment creditor can levy in at least three ways: (1) by executing against specifically identified personal property with the assistance of a sheriff; (2) by serving the garnishee defendant in a garnishment action to seize specific property in the hands of the garnishee defendant; or (3) by obtaining an order to apply specifically identified personal property to the satisfaction of the judgment, which a creditor may do with the assistance of a supplemental receiver. <u>Id.</u>, ¶¶23-25; Wis. Stat. § 815.05(6); Wis. Stat. § 812.01; Wis. Stat. § 816.08. Therefore, Town Bank is entitled to the malpractice proceeds only if it obtained a superior interest by levy before another creditor obtained a superior interest in those same proceeds.

¶27 Heartland is also a creditor of Brophy, to which he granted a security interest in potential proceeds of his malpractice claim in order to obtain a loan. Because Brophy voluntarily gave a security interest to Heartland so that Heartland would lend him money, Wis. Stat. ch. 409, which adopts Article 9 of the Uniform Commercial Code (UCC), governs the steps Heartland needed to take in order to obtain an interest superior to other creditors. Wis. Stat. § 409.101; Wis. Stat. § 409.109(1)(a); <u>Nat'l Operating, L.P. v. Mut. Life Ins. Co. of N.Y.</u>, 2001 WI 87, ¶31, 244 Wis. 2d 839, 630 N.W.2d 116 ("Wisconsin has adopted each section of the U.C.C. relevant to this case. This includes all of Article 9, which is embodied in

Chapter 409 of the Wisconsin Statutes. Chapter 409 does not vary in any material respect from the uniform law."). Under ch. 409, a party obtains an interest superior to other creditors by achieving statutory perfection. Wis. Stat. § 409.308; Daniel v. Bank of Hayward, 144 Wis. 2d 931, 936, 425 N.W.2d 416 (1988) ("As a general rule, the holder of a perfected security interest has an interest in . . . secured property which is superior to the interests of the debtor, unsecured creditors of the debtor and subsequent purchasers of the secured property.").

¶28 The requirements for statutory perfection can vary depending on the type of collateral, but the general rule is that "a financing statement must be filed to perfect all security interests." Wis. Stat. § 409.310(1); Smith & Spidahl Enters., Inc. v. Lee, 206 Wis. 2d 663, 669, 557 N.W.2d 865 (Ct. App. 1996) (explaining that generally, the filing of a financing statement is required to perfect a security interest). Additionally, perfection requires attachment of the security interest. Attachment, in turn, generally depends on three things: (1) the debtor must sign a security agreement identifying the collateral;[6] (2) the creditor must give the debtor value in exchange for the collateral; and (3) the debtor

---

[6] In some situations, the creditor may use alternative methods of perfection such as possession or control of the collateral. Wis. Stat. § 409.203(2)(c)2., et seq.; Nat'l Pawn Brokers Unlimited v. Osterman, Inc., 176 Wis. 2d 418, 434, 500 N.W.2d 407 (Ct. App. 1993) (explaining that Wisconsin law authorizes perfection by the secured party's possession of the collateral).

must have rights in the collateral. Wis. Stat. § 409.203(2); Nat'l Exch. Bank of Fond du Lac v. Mann, 81 Wis. 2d 352, 358, 260 N.W.2d 716 (1978) ("The requirements that the debtor sign a security agreement describing the collateral, that the creditor give value and that the debtor have rights in the collateral must all exist to give rise to an enforceable security agreement.").

¶29 Accordingly, a debtor and secured creditor can take some actions necessary for perfection at any time, but perfection does not actually occur until all the criteria are met. For instance, a debtor can execute a security agreement and the creditor can disperse a loan and file a financing statement, but perfection will not occur until the debtor has rights in the collateral. Stated otherwise:

> Assuming that the parties previously made an agreement covering [an item of] after-acquired property, that the secured party has either made an advance or obligated himself to do so, and that a proper filing has been made, the security interest attaches to the after-acquired property and is perfected the instant the debtor acquires "rights" to that property.

Peter F. Coogan, Article 9 of the Uniform Commercial Code: Priorities Among Secured Creditors and the "Floating Lien", 72 Harv. L. Rev. 838, 851 (1959); Savig v. Americana State Bank of Danube, 50 B.R. 1003, 1008 (D. Minn. 1985) (noting that "a secured creditor's interest in after-acquired property is not perfected until the debtor receives that property").

¶30 This is precisely the type of arrangement into which Brophy and Heartland entered. Brophy assigned Heartland the

14

potential proceeds of his malpractice claim as collateral before the proceeds came into existence.  Heartland gave notice of its security interest by filing a financing statement several months later, but still before Brophy actually settled the malpractice claim.  At that point, Heartland had set the stage, so to speak, so that the moment Brophy received rights in the proceeds, Heartland's interest became perfected.

¶31 By contrast, as of September 9, 2009, Town Bank had not taken sufficient action to provide it with an interest in the proceeds superior to other creditors.  The only action Town Bank took was to move for the appointment of a supplementary receiver and to grant that receiver the authority to proceed on Brophy's malpractice claim.  The court never ruled on Town Bank's motions.  Stated otherwise, because Town Bank did not levy before Heartland achieved statutory perfection, we conclude that Heartland has the superior interest in the proceeds.  See Associated Bank, __ Wis. 2d __, ¶38.

¶32 Having applied the statutes regarding judgment collection and secured transactions, we note that Heartland was able to access some of Brophy's property in a way that Town Bank could not.  For example, when Town Bank examined Brophy on March 9, 2006, he did not identify a legal malpractice claim.  Attorney Goldstein, the defendant in Brophy's malpractice claim, represented Brophy at the time of the supplemental proceeding, which suggests that Brophy was not aware of a potential malpractice claim at that time.

¶33 Additionally, when Town Bank learned about the malpractice claim, it could not levy due to the automatic stay of the bankruptcy court, which prevents creditors from taking actions to improve their positions during a bankruptcy. See 11 U.S.C. § 362. As a lender, Heartland avoided these problems by taking an assignment of the potential proceeds of Brophy's claim before they came into existence. This gave Heartland the upper hand in at least two respects.

¶34 First, it gave Heartland an edge with respect to timing. Rather than having to levy on specific property, which requires the property to be in existence, Heartland was able to encumber property Brophy did not yet have. Wis. Stat. § 409.204(1); see In re Pubs, Inc. of Champaign, 618 F.2d 432, 436 (7th Cir. 1980). It did so by filing a financing statement after lending money so that the moment Brophy obtained the proceeds, Heartland's security interest became perfected. See Pubs, 618 F.2d at 437.

¶35 Second, Heartland's ability to take an interest in the proceeds allowed it to avoid problems that might accompany the litigation of a legal malpractice claim by someone other than a client. See Official Comment 15 to U.C.C. 9-109(d)(12). As explained above, the proceeds of a lawsuit are "treated just like any other form of contractual obligation." 1C Julian B. McDonnell, Secured Transactions Under the Uniform Commercial

Code, § 19A.02[2][b] (2009).[7] Therefore, Heartland did not have to worry that accepting Brophy's assignment might run afoul of state law.

¶36 Applying the respective standards for judgment creditors and secured creditors to obtain an interest superior to other creditors, we conclude that Heartland is entitled to the proceeds. Brophy settled the malpractice suit on September 9, 2009, wherein the proceeds of the malpractice claim came into existence. By that time, Brophy had executed a security agreement identifying the proceeds as collateral, and Heartland had loaned Brophy money and filed a financing statement. All the requirements for perfection were met on that date. See Wis. Stat. § 409.308; Wis. Stat. § 409.203(2); Pubs, 618 F.2d at 436 (explaining that "[t]he requirement that the debtor have rights in the collateral is, *inter alia*, intended to postpone attachment until the property proposed to be subject to the security interest comes into existence or until the debtor acquires rights in it").

¶37 Having explained Heartland's position relative to Town Bank, we further review the legislative choices that established this structure.

---

[7] See also Weston v. Dowty, 414 N.W.2d 165, 167 (Mich. Ct. App. 1987) ("[s]ince plaintiffs agreed to assign only a portion of their recovery, if any, from the malpractice suit, . . . we conclude that no assignment of a legal malpractice action occurred"); First Nat'l Bank of Clovis v. Diane, Inc., 698 P.2d 5, 14 (N.M. Ct. App. 1985) (recognizing the ability of a client to "assign[] only the proceeds and not the right of [a legal malpractice] action").

17

E. Statutory Policies

¶38 Wisconsin Stat. ch. 409 is a uniform law that adopts Article 9 of the UCC. Wis. Stat. § 409.101; Nat'l Operating, 244 Wis. 2d 839, ¶31. By adopting each section of the UCC relative to secured transactions, the Wisconsin Legislature sought to "simplify, clarify, and modernize the law governing commercial transactions." Wis. Stat. § 401.103(1)(a). One way Article 9 modernizes the law of secured transactions is by "maximizing the financing available to [enterprises] and at the risk of . . . unsecured creditors." 1 Julian B. McDonnell, Secured Transactions Under the Uniform Commercial Code: Article 9 and the Security Controversy, § 1.03, at 1-14 (2009). As the facts of this case aptly demonstrate, secured creditors may be able to access a debtor's property in ways that an unsecured judgment creditor cannot.

¶39 The "fundamental policy choice [of] Article 9" that favors secured creditors is not the product of antagonism or unfairness toward unsecured creditors. Id. Rather, Article 9 aims to benefit unsecured creditors by enabling debtors to pay them. One scholar succinctly explained the theory as follows:

> [T]he availability of secured credit provides liquidity, which reduces the chance of debtor bankruptcy and thereby increases the expected value of unsecured claims. . . . [I]mperfections in the bankruptcy process tend to make creditors reluctant to lend, even on a secured basis, to debtors that are likely to go bankrupt, and also make debtors that are likely to go bankrupt reluctant to incur secured debt. New money secured credit therefore is usually extended only where it helps an otherwise viable debtor avoid

18

> bankruptcy, and not to support debtors that should be allowed to fail.

Steven L. Schwarcz, The Easy Case for the Priority of Secured Claims in Bankruptcy, 47 Duke L.J. 425, 431-32 (1997). Put simply, the law favors the secured creditor because "the secured creditor often provides the funds to enable the unsecureds to be paid." 1 McDonnell, supra, at 1-14.

¶40 While the soundness of this theory has been the subject of academic debate, it is beyond dispute that secured creditors currently enjoy a specially protected status under the law. Prod. Credit Ass'n of Madison v. Nowatzski, 90 Wis. 2d 344, 350-51, 280 N.W.2d 118 (1979). The ability of a party to take a security interest in after-acquired property and achieve perfection the moment the debtor acquires rights in the property, while a judgment creditor must levy personal property in order to bind it, is a prime example of this special status. A secured party's potential to avoid public policy prohibitions that could attach to the assignment of the legal malpractice claim, itself, is another.

¶41 In the case before us, Town Bank says that it has an interest superior to other creditors in all of a debtor's personal property because it served the debtor with notice to appear at a supplemental proceeding many years ago. This includes, according to Town Bank, property that a debtor acquired after the 2006 supplemental proceeding.

¶42 Accepting Town Bank's argument would take away the specially protected status of secured creditors. See id. For

19

example, if a judgment creditor could bind all of a debtor's personal property with a blanket lien simply by serving a notice to appear at a supplemental proceeding instead of levying specifically identified property, it too could encumber property before a debtor has rights in it. However, unlike a secured creditor, an unsecured judgment creditor provides no value to the debtor in exchange for such a benefit. It is this value to society as a whole——financing to a debtor——that justifies the secured creditor's protected status.

¶43 We conclude that if a judgment creditor were to have a blanket lien on all the personal property of a judgment debtor that precludes other creditors from pursuing collection, that is a policy choice better left to the legislature than to the courts. Compare Cal. Civ. Proc. Code § 708.110(d) (providing for a lien on non-exempt personal property for one year from service of notice to appear at supplemental proceedings); 735 ILCS 5/2-1402(m) (judgment "becomes a lien" on non-exempt personal property when citation from the clerk is served).

¶44 Finally, we note that Town Bank's concept of the scope of a judgment creditor's lien would diminish the lending Wis. Stat. ch. 409 seeks to encourage. This is so because if a judgment creditor could obtain a superior blanket lien on all of a debtor's personal property, the debtor would not have unencumbered non-exempt personal property to offer as security for a loan, which may be necessary to continue the debtor's business and pay its debts. In other words, a potential lender could not acquire a superior security interest in any non-exempt

personal property of a debtor who has an unsatisfied judgment against him or her and who has been served with notice to appear at supplemental proceedings. This would discourage lending to judgment debtors. It would thereby conflict with one of the policies underlying Wis. Stat. ch. 409: to provide financing to distressed debtors through a system of secured transactions.[8]

¶45 For these reasons, we decline to graft a blanket common law lien onto statutory judgment collection procedures. See generally Smith & Spidahl, 206 Wis. 2d at 673 ("Fashioning equitable solutions to mitigate the hardship of [statutory] requirements on particular creditors undermines [the system's] purpose. . . . [R]elaxing [statutory] requirements does not . . . justify the uncertainty and inconsistency that would result from such an approach."). Instead, we affirm our commitment to statutory procedures for judgment collection, under which a judgment creditor with a docketed judgment binds personal property by levying specifically identified property, and Wis. Stat. ch. 409 grants secured parties special protections in order to encourage lending that benefits society as a whole. Accordingly, Heartland has the superior interest in

---

[8] We recognize that there are circumstances under Wis. Stat. ch. 409 in which a judgment creditor prevails over a ch. 409 secured creditor——a judgment creditor has priority over a ch. 409 secured party when it executes on property before the ch. 409 creditor perfects its interest in the security relative to that property. See, e.g., Wis. Stat. § 409.322(1)(a); Wis. Stat. § 815.19.

the proceeds of Brophy's legal malpractice claim and therefore, we reverse the decision of the court of appeals.

### III. CONCLUSION

¶46 We conclude that (1) the debtor lawfully assigned the potential proceeds from his legal malpractice claim as collateral for a contemporaneously incurred debt to Heartland; and (2) Heartland is entitled to the proceeds because it perfected a security interest in them before Town Bank obtained a superior interest by levy. See Associated Bank, __ Wis. 2d __, ¶3 (a judgment creditor with a docketed money judgment obtains a superior interest in a debtor's non-exempt personal property when it levies specifically identified property). In reaching this conclusion, we note that Heartland lent money to the debtor. In consideration for the loan, Heartland took a security interest in the potential proceeds of the debtor's malpractice claim. This allowed Heartland to access the debtor's property in a way that Town Bank could not. Heartland filed a financing statement for its security interest in the proceeds of the malpractice claim before the proceeds came into existence. Therefore, the moment the debtor acquired proceeds from his claim, Heartland's interest became superior to that of other creditors, including Town Bank, who had not levied the proceeds.

*By the Court.*—The decision of the court of appeals is reversed.

¶47 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* I agree with the majority opinion that the proceeds of a legal malpractice claim may be used as collateral to secure a loan under Article 9 of the Uniform Commercial Code. Majority op., ¶¶18-24.[1] It is unclear from the record whether the malpractice claim in question existed at the time of service of the notice of the supplementary proceedings.[2]

¶48 Relying on In re Badger Lines, Inc., 224 Wis. 2d 646, 590 N.W.2d 270 (1999), the court of appeals concluded that Town

_____

[1] Wisconsin has codified its version of Article 9 of the Uniform Commercial Code at Wis. Stat. ch. 409.

The majority opinion uses interchangeably the terms "assign," "assignment," and "assignable" to refer to both assignment of rights in the proceeds of a legal malpractice claim and assignment of a security interest in the proceeds as collateral for a loan under Article 9.

A property interest may be nonassignable, but may still be used as collateral under Article 9, Section 9-408, Wis. Stat. § 409.408. See, e.g., Belke v. M&I First Nat'l Bank of Stevens Point, 189 Wis. 2d 385, 525 N.W.2d 737 (Ct. App. 1994) (certificates of deposit were properly used as collateral for a loan under chapter 409 even though the certificates of deposit explicitly stated that they could not be transferred or assigned without the bank's consent and the bank did not consent). For an overview of the use of nonassignable property interests as collateral to secure loans under the UCC, see Thomas E. Plank, The Limited Security Interest in Non-Assignable Collateral Under Revised Article 9, 9 Am. Bankr. Inst. L. Rev. 323, 329-36 (2001); G. Ray Warner, Non-Assignable Rights, Contracts, and Leases as Collateral Under Revised Article 9, Am. Bankr. Inst. J., Oct. 2000, at 18.

[2] Because I am in dissent in Associated Bank N.A. v. Collier, 2014 WI 62, ___ Wis. 2d ___, ___ N.W.2d ___, and in the instant case, I do not address the thorny issues raised by the parties, such as whether the creditor's equitable lien extends to after acquired property and whether the malpractice claim in the present case was after-acquired property.

Bank acquired a common-law equitable lien superior to Heartland's interest.

¶49 Relying on its decision in Associated Bank N.A. v. Collier, 2014 WI 62, ___ Wis. 2d ___, ___ N.W.2d ___, of even date, the majority opinion concludes that because Town Bank did not "levy" before Heartland perfected its statutory lien,[3] Heartland "has the superior interest" in the proceeds. Majority op., ¶4 (citing Associated Bank, 2014 WI 62, ¶3).

¶50 For the reasons stated in my dissent in Associated Bank, I do not join the majority opinion in the instant case.

¶51 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

---

[3] See majority op., ¶4.

¶52 ANN WALSH BRADLEY, J. *(dissenting).* Although I join the dissent, I write separately to voice my concern with this court's recent trend in sua sponte expanding the issues before it.

¶53 In this case a majority of the court voted to issue a post oral argument order raising an issue heretofore non-existent. It asked:

> (1) whether the potential proceeds from a legal malpractice claim can be lawfully assigned as security for a contemporaneously incurred debt;

> (2) if the potential proceeds from a legal malpractice claim are assignable, whether such assignment was future property at the time of the supplemental exam conducted in this case.

Attorney's Title Guar. Fund, Inc. v. Town Bank, No. 2011AP2774, unpublished order (Nov. 19, 2013).

¶54 Issues relating to the assignability of legal malpractice claims were never raised by the parties in this court, or in the court of appeals, or in the circuit court. An exchange at oral argument nails this point:

> Chief Justice Abrahamson: And there's no, is there an issue in this case as to whether your assignment was any good?

> Attorney for Heartland: No, our assignment has never been contested.

¶55 Rather than presenting an even playing field, the majority appeared to offer an assist to Heartland's opposing counsel. The answer to the new issue raised by the majority could have proven to be outcome determinative, obviating the need to address the issues actually raised and litigated by the parties.

1

¶56 By raising sua sponte a brand new outcome-determinative issue, an appellate court tends to blur the lines between the role of the lawyer as advocate and the role of the judge as impartial decision maker. In contrast to the other branches of government, the judicial branch's role seems better fitted to respond to issues presented rather than creating issues to present.

¶57 As I have previously written:

[T]he courts play a passive role in our system of government. Unlike the legislative or the executive branch of government which have as their regular fare the responsibility to raise and resolve the issues of the day, our role is to respond to the issues presented. . . . The wisdom of such restraint is apparent.

The rule of law is generally best developed when issues are raised by the parties and then tested by the fire of adversarial briefs and oral arguments. Indeed, "[t]he fundamental premise of the adversary process is that these advocates will uncover and present more useful information and arguments to the decision maker than would be developed by a judicial officer acting on his own in an inquisitorial system." Adam A. Milani & Michael R. Smith, Playing God: A Critical Look at Sua Sponte Decisions By Appellate Courts, 69 Tenn. L. Rev. 245, 247 (2002), citing United States v. Burke, 504 U.S. 229 (1992) (Scalia, J., concurring).

City of Janesville v. CC Midwest, Inc., 2007 WI 93, ¶¶67-68, 302 Wis. 2d 599, 734 N.W.2d 428 (Bradley, J., dissenting).

¶58 Although the issue addressing the validity of the assignment of legal malpractice claims relates to the issues presented by the parties, it was not necessary for the court to address the validity of the assignment in order to answer the questions presented.

2

¶59 Heartland filed a petition for review, asking this court to address the following questions:

1) Does a judgment creditor's common law receiver's lien attach to personal property acquired by a judgment debtor indefinitely into the future after the judgment creditor has conducted supplementary proceedings?

2) Where a judgment creditor has admittedly failed to make a supplemental commissioner's order, directing the judgment debtor to appear at a supplementary examination, a matter of public record by filing this order and proof of service in the court file, as is required by Wis. Stat. § 816.035(1), should a court nevertheless enforce the judgment creditor's secret receiver's lien in the judgment debtor's personal property?

¶60 I would have addressed those questions and those alone. Indeed, it is not apparent to me why the issue raised sua sponte by the majority was not subject to our usual approach of forfeiture. Here it was not a matter of merely failing to preserve for appellate review an issue that was previously raised. Rather, the issue never previously existed in this case.

¶61 Typically, where a party has not raised an issue before the circuit court or the court of appeals, we deem that issue forfeited. See, e.g., Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶83, 350 Wis. 2d 554, 835 N.W.2d 160 (declining to address an inverse condemnation/takings claim where its proponent "is attempting to make a fundamentally different argument than that which it raised and tried before the circuit court . . . ."); State v. Dowdy, 2012 WI 12, ¶5, 338 Wis. 2d 565, 808 N.W.2d 691 (declining to decide "whether a

circuit court has inherent authority to reduce the length of probation, and if so, what standard applies [because] [n]either Dowdy's petition to the circuit court nor the circuit court's order was grounded in the court's alleged inherent authority."); Schill v. Wis. Rapids Sch. Dist., 2010 WI 86, ¶45, 327 Wis. 2d 572, 786 N.W.2d 177 ("Because the issue of the circuit court's competence was never raised in the circuit court, we treat the issue as having been forfeited.").

¶62 This court has emphasized that the forfeiture rule "is essential to the efficient and fair conduct of our adversary system of justice." State v. Huebner, 2000 WI 59, ¶12, 235 Wis. 2d 486, 611 N.W.2d 727. The rule:

> gives the parties and the circuit court notice of the issue and a fair opportunity to address it; encourages attorneys to diligently prepare for and conduct trials; and prevents attorneys from "sandbagging" opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal.

Schill, 327 Wis. 2d 572, ¶45 n.21. It further "encourages litigation of all issues at one time, simplifies the appellate task, and discourages a flood of appeals." State v. Caban, 210 Wis. 2d 597, 605, 563 N.W.2d 501 (1997).

¶63 With its order for additional briefing on the assignability of legal malpractice claims, the court offered Town Bank a new bite at the apple. It suggested a new, possibly outcome-determinative argument which Town Bank had previously not made. This action is a departure from precedent suggesting that the development of arguments be left to the litigants. See, e.g., Jankee v. Clark Cnty., 2000 WI 64, ¶7, 235 Wis. 2d

4

700, 612 N.W.2d 297 ("If an issue is not raised in the petition for review or in a cross petition, 'the issue is not before us.'"); Gardner v. Gardner, 190 Wis. 2d 216, 238 n.3, 527 N.W.2d 701 (Ct. App. 1994) ("We will not independently develop [appellant]'s argument and, therefore, we will not consider this issue"); Estate of Balkus v. Sec. First Nat'l Bank, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593 (Ct. App. 1985) (declining to address issue not developed by the appellant).

¶64 Now, after ordering additional briefing and having a second round of oral arguments on these new issues, the majority comes to the conclusion that the parties' initial decision not to contest this issue was correct. In the end, the majority's efforts to sua sponte develop its own potentially dispositive issue was for naught.

¶65 This unnecessary excursion underscores the wisdom of exercising judicial restraint. The role of the lawyer as advocate and the role of the judge as impartial decision maker should be kept separate.

¶66 Accordingly, I respectfully dissent.

¶67 I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.