PATIENCE DRAKE ROGGENSACK, J.
¶ 1. This is a review of an unpublished decision of the court of *347 appeals[1] affirming the circuit court's[2] denial of summary judgment, grant of a motion to turn over property to the receiver, and denial of a motion for reconsideration. The review concerns the collection efforts of two judgment creditors of defendant Jack Collier, SB1 Waukesha County, LLC and Decade Properties, Inc., the latter being owned by Collier's business associate, Jeffrey Keierleber.
¶ 2. Decade argues that when it served Collier with an order to appear at supplemental proceedings, it perfected a "common law creditor's lien" on all of Collier's personal property. According to Decade, its lien preserves the property for Decade's benefit, thereby precluding SB1 from pursuing collection from it. SB1 argues that even though Decade served Collier with an order to appear at supplemental proceedings before SB1 did so, Decade has no lien on Collier's personal property because Decade's judgment was not docketed before its service of the order to appear. SB1 reasons that a judgment must be capable of execution before there is the potential for a common law lien on personal property and un-docketed judgments cannot obtain an execution.
¶ 3. We conclude that supplemental proceedings under ch. 816 are a discovery tool in aid of judgment collection. Decade's serving Collier with an order to appear for supplemental proceedings did not give rise to a blanket lien on all of Collier's personal property that prevented SB1 from pursuing collection. A judgment creditor obtains an interest in a judgment debtor's *348 identified, non-exempt personal property superior to other unsecured creditors when it dockets its money judgment, identifies specific personal property and levies that property. Levying may be accomplished by at least three different means: (1) by executing against specific personal property with the assistance of a sheriff; (2) by serving the garnishee defendant in a garnishment action to seize specific property in the hands of the garnishee defendant; or (3) by obtaining an order to apply specific personal property to the satisfaction of the judgment, which a creditor may do with the assistance of a supplemental receiver. Wis. Stat. § 815.05(6) (2011-12);[3] Wis. Stat. § 812.01; Wis. Stat. § 816.08.
¶ 4. Here, SB1 was the first judgment creditor with a docketed money judgment to levy specific, nonexempt personal property of Collier. It did so by obtaining a court order to turn over specifically identified property to its receiver. Accordingly, we affirm the decision of the court of appeals that concluded that SB1 has priority over Decade in regard to the specific personal property SB1 identified and levied. However, insofar as the decision of the court of appeals can be read to recognize a blanket lien in favor of SB1 that prevents other creditors from pursuing collection from Collier's personal property, we modify that decision because no blanket lien exists.
I. BACKGROUND
¶ 5. This case concerns SBl's attempt to satisfy the portion of a default judgment against Collier that it purchased from Associated Bank, N.A. The relevant *349 portion of the judgment[4] relates to Collier's default on a $7.2 million promissory note in favor of Associated, which Collier secured with a personal guarantee and a mortgage on a Brookfield property.
¶ 6. After purchasing a portion of Associated's docketed money judgment against Collier, SB1 obtained an order for Collier to appear at supplemental proceedings. Despite repeated attempts to serve Collier in Wisconsin and Florida, where Collier had a second home, SB1 was unsuccessful and the order expired.
¶ 7. Shortly after SB1 obtained an order for Collier to appear, Keierleber, the owner of Decade, sued Collier. The court of appeals succinctly summarized the litigation as follows:
In short order, Keierleber commenced six lawsuits on behalf of Keierleber, Keierleber-owned, and Keierleber- and Collier-owned Wisconsin and Florida entities, Decade among them. Each complaint sought enforcement of a claimed loan right and money judgment against Collier or against two business entities of which Keierleber and Collier each owned a fifty-percent interest. While still unserved with SBl's order to appear, Collier accepted service of these six complaints. The parties involved in the six new actions executed stipulations agreeing to judgment amounts in each of them.
Associated Bank NA. v. Collier, No. 2011AP2597, unpublished slip op., at ¶ 4 (Wis. Ct. App. Nov. 28, 2012).
¶ 8. Of these six lawsuits, the present case concerns only the $654,646.83 judgment Decade obtained against Collier personally. Decade tried to docket this *350 judgment with the Waukesha County Clerk of Court by sending the judgment, a $5.00 docketing fee and a receipt for docketing to the circuit court, where the judgment was to be signed and forwarded to the clerk with the docketing fee and receipt. However, even though Decade's attorneys received the receipt dated October 26, 2010, the clerk did not enter the judgment in the judgment and lien docket. Instead, on June 29, 2011, after the error was discovered, the clerk docketed Decade's judgment.
¶ 9. On November 16, 2010, Decade served Collier with an order to appear for supplemental proceedings, which Decade's attorney conducted on November 22, 2010. In its brief, Decade explained that it took these actions after learning about SBl's collection efforts in order to "protect its interest by first obtaining a judgment and then a superior Creditor's/Receivers Lien against Collier's personal property." It does not appear from the record that Decade took any additional steps to seize any of Collier's personal property to satisfy its judgment.
¶ 10. Having been unsuccessful in serving Collier before the initial order expired, SB1 subsequently obtained a second order for Collier to appear for supplemental proceedings. SB1 also moved the circuit court to appoint a supplemental receiver.
¶ 11. On April 2, 2011, at Collier's Florida residence, SB1 finally obtained service of the order to appear for supplemental proceedings and its motion to appoint a receiver. On April 18, 2011, Collier failed to appear at the scheduled supplemental proceedings and the supplemental commissioner issued an order to show cause why Collier should not be held in contempt of court. The commissioner also appointed Douglas Mann as supplemental receiver.
*351 ¶ 12. On June 9, 2011, the day before the return date of the order to show cause, Collier initiated a state insolvency proceeding in Florida. SB1 moved to enjoin the insolvency proceeding on the grounds that SB1 had a receiver's lien on Collier's personal property, which was perfected. Decade intervened and objected to imposition of an injunction. The Florida insolvency proceeding was enjoined and Collier was found in contempt of court for failing to appear at SBl's supplemental proceedings.
¶ 13. On July 29, 2011, SB1 moved for court approval of the sale of Collier's personal property located in Brookfield, Wisconsin, which had a fair market value of $63,925. SB1 also moved to order Collier to turn over certain shares of stock, rights to unasserted counterclaims and affirmative defenses in Waukesha County cases, and all partnership interests in and profits from an entity called AWI Limited Partnership.
¶ 14. Decade intervened and opposed SBl's motions. Decade moved for summary judgment on the grounds that it had a superior lien on all of Collier's personal property. It argued that according to our decision in Mann v. Bankruptcy Estate of Badger Lines, Inc., 224 Wis. 2d 646, 590 N.W.2d 270 (1999), all that is necessary to perfect a common law lien that prevents SB1 from pursuing collection is service on Collier of an order to appear at a supplemental proceeding.
¶ 15. SB1 responded that Decade could not have had a lien on Collier's personal property when it served Collier with a notice to appear at supplemental proceedings because Decade's judgment had not been entered in the judgment and lien docket.
*352 ¶ 16. Decade contended that the failure to enter the judgment in the judgment and lien docket did not affect the validity of its lien.[5] At a hearing before the circuit court, Decade's attorney argued that "the key issue is that execution and the ability to execute [are] separate from the ability to institute supplementary proceedings because you don't need to have [an unsatisfied execution in order to proceed with a compelling order to appear before a court commissioner." In other words, Decade's position was that a judgment creditor can obtain a common law lien even if its judgment is not docketed or executable because the ability to execute and a judgment creditor's lien are not tethered.
¶ 17. The circuit court rejected Decade's argument, reasoning that "if the underpinning for the proceeding fails[,] the proceeding itself necessarily fails." In denying Decade's motion for reconsideration, the court reiterated that its position was that "you can't pursue collection unless you have an executable judgment. . . . [H]ow can you go forward and compel somebody to appear at a supplementary where you don't have a judgment that you can collect on[?]"
¶ 18. Accordingly, the circuit court concluded that SBl's interest in Collier's personal property was superior to that of Decade's, holding that "[a]ll actions, proceedings, liens or other orders relative to Decade's un-docketed judgment prior to June 29, 2011 that would otherwise [a]ffect or limit SBl's supplemental proceedings or attempt to execute upon the judgment are held for naught." The circuit court then granted SBl's motions and approved the sale of Collier's personal property. The court also vested the supplemental *353 receiver with Collier's rights in the property identified in SBl's motion for turnover.
¶ 19. Decade appealed and the court of appeals affirmed the orders of the circuit court. The court of appeals concluded that service of an order to appear at supplemental proceedings "does not. . . present an alternative to a properly docketed judgment." The court also concluded that the circuit court's refusal to exercise the court's equitable power in favor of Decade was within its discretion, noting that "the record suggests that Collier evaded service from SB1 for months and that Decade's six lawsuits were filed as a dilatory tactic."
¶ 20. Decade seeks review before us, making the same arguments it made to the circuit court and the court of appeals. We affirm the decision of the court of appeals to the extent that it recognized SBl's priority to the property SB1 levied. We also affirm its conclusion that an un-docketed judgment cannot obtain an execution. We modify the decision of the court of appeals insofar as it could be read to recognize a blanket lien giving any one unsecured judgment creditor the exclusive right to pursue collection from all of a debtor's personal property, simply due to service of an order to appear for supplemental proceedings.[6]
*354 II. DISCUSSION
A. Standard of Review
¶ 21. Decade asks us to uphold what it asserts is a judgment creditor's lien on all of Collier's personal property. Whether a lien exists and the effect of an alleged lien against third parties are questions of law that we review independently of the court of appeals. See McIntyre v. Cox, 68 Wis. 2d 597, 602, 229 N.W.2d 613 (1975); Yorgan v. Durkin, 2006 WI 60, ¶ 55, 290 Wis. 2d 671, 715 N.W.2d 160 (Roggensack, J., dissenting).
¶ 22. Decade also asks us to review the circuit court's refusal to exercise its equitable powers, for which we employ an erroneous exercise of discretion standard. J.L. Phillips & Assocs. v.E & H Plastic Corp., 217 Wis. 2d 348, 365, 577 N.W.2d 13 (1998). An erroneous exercise of discretion occurs when the circuit court fails to exercise discretion, the facts fail to support the court's decision or the circuit court applies the wrong legal standard. Id. at 364-65.
B. General Debtor/Creditor Principles
¶ 23. By entering a judgment in the judgment and lien docket, a judgment creditor obtains a ten-year statutory lien on real property of the debtor located in the county in which the judgment was docketed. Wis. Stat. § 806.15(1). However, entering a judgment in the judgment and lien docket does not create a statutory lien on the debtor's personal property. Instead, a judgment *355 creditor obtains an unsecured, inchoate interest with regard to the debtor's personal property, tangible and intangible, against which to levy. As such, a judgment creditor will typically "have to take further steps to enforce the judgment." Robert A. Pasch, 12 Wisconsin Practice Series: Wisconsin Collection Law § 14:1, at 286 (2d ed. 2006). Execution, garnishment and turnover orders applying property in satisfaction of a judgment are all methods of levying the judgment debtor's personal property.
1. Levy
¶ 24. Wisconsin statutes provide several different methods by which to levy, but each "require [s] reachable, non-exempt, assets of the debtor." Pasch, supra, § 14:1, at 287. One method used to judicially enforce money judgments is execution. Black's Law Dictionary 650 (9th ed. 2009); see Wis. Stat. § 815.02 ("A judgment which requires the payment of money or the delivery of property may be enforced in those respects by execution."). For instance, a judgment creditor can execute on specific, non-exempt personal property of the debtor by obtaining an order to have the sheriff seize the property. Wis. Stat. § 815.05(6).
¶ 25. If a judgment creditor locates specific, nonexempt personal property belonging to the debtor or owed to the debtor in the control of a third party, the judgment creditor may be able to levy that property through garnishment. Wis. Stat. § 812.01. Garnishment is entirely statutory.[7] Therefore, "[i]n the absence of *356 specific statutory authorization, garnishment does not lie." Moskowitz v. Mark, 41 Wis. 2d 87, 91, 163 N.W.2d 175 (1968).
¶ 26. Finally, a creditor may levy specific, nonexempt personal property by obtaining a court order to apply that property in satisfaction of the judgment. Wis. Stat. § 816.08. A supplemental receiver may obtain such a turnover order on a creditor's behalf. Id.; Candee v. Egan, 84 Wis. 2d 348, 361, 267 N.W.2d 890 (1978) ("A receiver in aid of execution is authorized to collect those assets revealed by the examination of the debtor, take possession of them, apply them to the satisfaction of the judgment, and return the excess to the judgment debtor.").
¶ 27. Because each of these statutory collection procedures requires a creditor to identify specific, nonexempt property of the debtor to levy, judgment collection can be cumbersome and expensive if the details of a debtor's property are not known to the judgment creditor. Supplemental proceedings provide a mechanism by which to obtain information in aid of judgment collection.
2. Supplemental proceedings
¶ 28. Wisconsin Stat. ch. 816 is entitled "Remedies Supplementary to Execution." Supplementary proceedings are a "form of discovery . . . used where the judgment creditor is uncertain of the nature, location, extent, and amount of the debtor's property." Pasch, *357 supra, § 16:1, at 318. Wisconsin Stat. ch. 816 vests a supplemental court commissioner with certain powers to aid in enforcement of the judgment against the judgment debtor's property. For instance, a supplemental court commissioner can compel a judgment debtor who has been served with an order in compliance with Wis. Stat. § 816.035 to appear to answer questions concerning his or her property. Wis. Stat. § 816.03. If it appears that there is danger of a judgment debtor leaving the state or if the judgment debtor has property he or she unjustly refuses to apply to the judgment, the commissioner may require the debtor to give a bond and refrain from disposing of property not exempt from execution. Wis. Stat. § 816.07. If supplemental proceedings reveal non-exempt personal property, a court commissioner or judge may order that the property be applied toward the judgment, sometimes through the use of a supplemental receiver, rather than having a sheriff seize the property. Wis. Stat. § 816.04; Wis. Stat. § 816.08.
3. Liens
¶ 29. No statute grants a judgment creditor a lien on the judgment debtor's personal property simply by docketing the judgment. However, in Badger Lines, we mentioned a lien that had as one of its underpinnings a docketed money judgment. There, the United States Court of Appeals for the Seventh Circuit certified the following question that arose in a dispute in federal bankruptcy court: "Does Wisconsin law require that a lien obtained by a judgment creditor who institutes supplementary proceedings under Wis. Stat. § 816.04 be perfected, and if so, how is the lien to be perfected?" Badger Lines, 224 Wis. 2d at 649 n.2. When we decided *358 Badger Lines, we assumed, as did the certified question, that the judgment creditor had a lien, and we answered that "a creditor's lien is valid and superior against other creditors at the time the creditor serves the debtor with a summons to appear at the supplementary proceeding under Wis. Stat. § 816.03(1)(b)."Id. at 649. We now take a closer look at when a lien may arise and to which personal property such a lien may attach.
¶ 30. Kellogg v. Coller, 47 Wis. 649, 3 N.W. 433 (1879), involved two judgment creditors who sought to employ Wis. Stat. § 3030 and Wis. Stat. § 3031 (1878) when the executions of their individual judgments were returned unsatisfied. Id. at 657. To some extent, Kellogg's discussion is helpful to determining when a judgment creditor may obtain a lien. There, we explained:
In several summary proceedings supplementary to executions against the same debtor, returned unsatisfied (R. S., secs. 3028-3038), — such a proceeding being a substitute for a creditor's bill,' — -the creditor who first commences his proceeding and obtains service of process upon the debtor, and prosecutes the proceeding with proper diligence to the appointment of a receiver, obtains a prior lien upon the assets of the debtor.
Id. at 649 (emphasis added). This passage appears to be the source of the common law receiver's lien discussed in Candee, which we cited in Badger Lines, and Badger Lines itself. Badger Lines, 224 Wis. 2d at 654.
¶ 31. However, Kellogg says nothing about a blanket judgment creditor's lien on all of the judgment debtor's personal property. In addition, it is somewhat problematic to argue too strongly from cases as old as Kellogg because the statutes they employ differ from current legislative enactments, and the ever developing *359 body of case law and code can shade what at the moment of decision once seemed so clear.
¶ 32. Furthermore, there is a "diversity of opinion as to [the] real character" of judgment creditor's liens relating to execution that dates back much farther than Candee. For instance, in Bank of Commerce v. Elliott, 109 Wis. 648, 660-61, 85 N.W. 417 (1901), we examined the rights of a judgment creditor who had initiated a garnishment action. In attempting to ascertain the creditor's rights in relation to a bankruptcy trustee, we noted:
The courts have uniformly said .. . that the service of a garnishee process is an equitable levy upon the property of the debtor in the hands of the garnishee, and that the interest thereby obtained in such property is at least in the nature of an equitable lien, and has been commonly called a lien. In many cases it has been called a lien without qualification, in others an equitable lien, and in some a mere inchoate or incipient lien, — the mere commencement of proceedings to obtain a lien in fact. . .. Some. . . authorities are to the effect that a garnishee levy creates a specific lien. Others are directly to the contrary.
Id. at 660-61 (emphasis added). As we have explained, garnishment creates a lien due to the seizure of the debtor's property that is in the hands of the garnishee defendant. Morawetz v. Sun Ins. Office, 96 Wis. 175, 178, 71 N.W. 109 (1897) ("[G]arnishment is a seizure in the hands of the garnishee by notice to him, creating an effectual lien upon the garnished property to satisfy whatever judgment").
¶ 33. The judgment creditors in both Kellogg and Bank of Commerce levied the debtor's property in order to affix common law liens — Kellogg by attempted execu *360 tion that was returned unsatisfied and then securing the appointment of a receiver, who applied the debtor's personal property to the judgment debt, and Bank of Commerce by prosecuting a garnishment action, wherein the specific personal property in the hands of a third party was levied. Kellogg, 47 Wis. at 656; Bank of Commerce, 109 Wis. at 661. The conclusion that a judgment creditor who first identifies and levies specific, non-exempt personal property of a judgment debtor has a superior interest in regard to other judgment creditors who have taken no such actions in regard to the identified property is consistent with our earlier decisions.[8]
¶ 34. For example, in Alexander v. Wald, 231 Wis. 550, 286 N.W. 6 (1939), we examined the rights of a supplemental receiver vis-a-vie a bankruptcy trustee. Id. at 551. We held that the receiver, who had discovered and executed on intangible personal property consisting of a real estate mortgage, a chattel mortgage, and certain personal property that the debtor had fraudulently conveyed, had an interest superior to that of the bankruptcy trustee with respect to that property because the receiver had been appointed and levied more than four months before commencement of the bankruptcy. Id.
¶ 35. In Holton v. Burton, 78 Wis. 321, 47 N.W. 624 (1890),[9] we reached a consistent result. Holton concerned a judgment creditor who had initiated supplemental proceedings, but had not levied any spe *361 cific property. An assignment for the benefit of creditors was made after supplemental proceedings were begun, but before a supplemental receiver was appointed. Id. at 322. We reasoned that the judgment creditor did not have a superior interest, but instead had to take a pro rata share of the debtor's personal property in the insolvency proceeding because the judgment creditor had not timely levied specific personal property to avoid the effect of the insolvency proceedings. Id. at 327-28.
¶ 36. It is reasonable to conclude that the results in Alexander and Holton, where judgment creditors were in disputes with insolvency trustees, were at least partially due to the different steps the judgment creditors took and the timing of those steps. When the judgment creditor exercised rights to the debtor's property by timely levying specific property well in advance of the insolvency proceedings, the creditor prevailed. When the creditor did nothing more than initiate supplemental proceedings prior to an insolvency proceeding, the creditor did not prevail. Stated otherwise, a judgment creditor obtained a superior interest in identified personal property of a judgment debtor that could defeat the claim of a trustee in insolvency or bankruptcy proceedings when the judgment creditor or a receiver acting on the judgment creditor's behalf levied that property before the trustee obtained an interest in the property.[10]
*362 ¶ 37. At first glance, Kellogg may appear to cast doubt on this interpretation. In Kellogg, two judgment creditors, who had executions returned unsatisfied, initiated supplemental proceedings and obtained appointments of two supplemental receivers.[11] The first judgment creditor to initiate supplemental proceedings was second to properly serve the debtor with an order to appear for supplemental proceedings because of a technical problem with its first service. Kellogg, 47 Wis. at 651-52. By the time the first judgment creditor properly served the debtor, the second judgment creditor had served the debtor and the debtor had assigned his property to the second judgment creditor's receiver in aid of execution of the second creditor's judgment. Id. Despite the assignment, we concluded that "under all of the circumstances of the case, [the second creditor's] proceeding [wa]s inoperative to give [the second creditor] a prior lien." Id. at 657.
¶ 38. Read in light of its facts, Kellogg established the judgment creditor for whose benefit a supplemental receiver must act, i.e., which judgment creditor had priority to money that the supplemental receiver recovered, regardless of which creditor had the receiver appointed. Under Kellogg, the first judgment creditor who made a "bona fide attempt to serve" an order to appear for supplemental proceedings and also prosecuted "with proper diligence" to the appointment of a *363 supplemental receiver had priority to assets the supplemental receiver recovered, even if the receiver was appointed in the supplemental proceedings of a different judgment creditor. Id. at 656-57.[12] The equities of the underlying facts also may have impacted our decision in Kellogg because the second judgment creditor and her attorney "had actual notice that [Kellogg] had previously commenced [supplemental proceedings]" when she instituted her proceeding. Id. at 652.
¶ 39. However, it is significant that two judgment creditors remained free to pursue collection on their docketed judgments at the same time. Id. at 658 ("different [supplemental] proceedings may be pending at the same time, the only restriction upon a junior proceeding being that creditors prosecuting prior proceedings shall be notified of the pendency thereof, and that but one receiver shall be appointed. .. . the plaintiff in the junior proceeding should be allowed to proceed . . . without regard to priorities").
¶ 40. Furthermore, our conclusion that a superior judgment creditor's interest in specific personal property may arise when that property is seized has been the statutory directive of the legislature since at least 1864. As we explained so long ago in Knox v. Webster, 18 Wis. 426 (*406) (1864), when interpreting a prior statute, " '[p]ersonal property shall be bound from the time of its seizure on execution.' Before seizure there is no lien[;] . . . [t]he lien takes effect from the date of the levy and by virtue thereof." Id. at 429-30 (*409) (internal citation omitted). In this regard, the current statute *364 states the same legal principle: "Personal property shall be bound from the time it is seized." Wis. Stat. § 815.19(1). Accordingly, seizure, often referred to as levying, of personal property is necessary to create a lien in favor of an unsecured judgment creditor.
¶ 41. Having explained the common law foundation and the statutory foundation for when a judgment creditor's lien may arise in identified personal property,[13] we briefly return to Badger Lines. Badger Lines arose in a priority contest between a judgment creditor, Emerald Industrial Leasing Corporation, and a trustee in bankruptcy. Badger Lines, 224 Wis. 2d at 649-50. A trustee in bankruptcy has, by federal statute, all the rights of a judgment creditor. 11 U.S.C. § 544(a). A supplemental receiver had been appointed to administer Badger Lines' property for the benefit of Emerald before the case made its way to us. Prior to the appointment of the receiver, Emerald also had docketed its judgment. Badger Lines, 224 Wis. 2d at 649-50. And subsequent to said docketing, Emerald served an order directing Badger to appear for a ch. 816 supplemental proceeding. Id. at 650.
¶ 42. Docketing a creditor's judgment is a condition precedent to establishing the priority of a judgment creditor's interest because a judgment must be docketed before an execution against the property of a judgment debtor can issue. Wis. Stat. § 815.05(1g)(a)6. (requiring that an execution shall state, "[t]he time of entry in the *365 judgment and lien docket in the county to which the execution is issued"). Furthermore, a judgment creditor must levy specifically identified personal property of the debtor before a lien can arise in that property. Knox, 18 Wis. 2d at 429-30; Wis. Stat. § 815.19(1).
¶ 43. In Badger Lines, the trustee in bankruptcy attempted to declare Emerald's interest a preference, whereby he could place Emerald's money judgment among all of the other unsecured creditors' claims. Badger Lines, 224 Wis. 2d at 650-51. Of course, Emerald had no interest in sharing the assets it had uncovered with other creditors. However, if Emerald's lien was created within 90 days of filing the bankruptcy, it would be held to be an avoidable preference and Emerald would lose to the trustee. Id. at 651. Therefore, instead of focusing on the creation of its lien, Emerald shifted the court's focus to "perfection" of its lien. Emerald did so because if perfection occurred more than 90 days before the filing of the bankruptcy, Emerald could possibly prevail.
¶ 44. In Badger Lines, we did not have a full record that displayed all the issues that we might have considered; therefore, it differed significantly from the case now before us.[14] Badger Lines' statement that the *366 date of service on Badger Lines of the order to appear for supplemental proceedings was the date of "perfection" must be limited to the context in which it arose. That context did not include an assertion that common law liens do not require "perfection," but rather, liens arise in specifically identified, non-exempt personal property when that property is levied.
¶ 45. Accordingly, it must be recognized that service of an order to appear for supplemental proceedings will not create an interest that is superior to the interest of a docketed judgment creditor who has levied specific personal property of the debtor. Merely serving an order to appear for supplemental proceedings also will not create a common law lien on the debtor's personal property nor will it give a judgment creditor an interest superior to that of a secured creditor who has timely proceeded according to the directives of Wis. Stat. ch. 409.[15]
*367 4. Statutory collection procedures
¶ 46. To conclude, as Decade asserts, that simply serving a judgment debtor with an order to appear at supplemental proceedings gives a judgment creditor the exclusive right to pursue collection from all of the debtor's personal property would improperly "impinge on the purview of the legislature" by eviscerating its statutory scheme for judgment collection. See Crown Castle USA, Inc. v. Orion Constr. Group, LLC, 2012 WI 29, ¶ 17, 339 Wis. 2d 252, 811 N.W.2d 332 (refusing to find an implied right to compel a third party to appear at supplemental proceedings because Wis. Stat. ch. 816 did not provide for one).
¶ 47. For example, if a judgment creditor were able to encumber all of a judgment debtor's personal property simply by serving an order to appear for supplemental proceedings, alternate statutory processes such as execution, ch. 815, and garnishment, ch. 812, and turnover orders would be nearly useless for collection of money judgments. A judgment creditor who does nothing more than initiate supplemental proceedings could stop another judgment creditor who has located specific, non-exempt personal property from having the sheriff seize the asset under a valid execution order. Similarly, a judgment creditor who discov *368 ered a judgment debtor's bank account could be prevented from garnishing that account once an order to appear for supplemental proceedings was served. And since state law determines priority in bankruptcy, a judgment creditor who does nothing more than serve a debtor with an order to appear at supplemental proceedings outside of the bankruptcy preference period could thereby defeat the claim of a bankruptcy trustee (and the unsecured creditors he or she represents) to all of the debtor's personal property. If those results were to occur, they would directly contradict the legislature's directive that "[pjersonal property shall be bound from the time it is seized." Wis. Stat. § 815.19(1).
¶ 48. Moreover, by granting the judgment creditor with a docketed judgment who first levies on nonexempt personal property a superior interest in that property, "[t]he law justly rewards the diligent creditor who by his timely efforts succeeds in discovering assets of the debtor which are inequitably withheld from his creditors." John W. Smith, The Equitable Remedies of Creditors § 235, at 243 (Chicago, Callaghan & Co. 1899). Rather than encouraging diligence, the kind of blanket lien Decade asks us to recognize would remove incentives for a judgment creditor to locate and levy a debtor's personal property. The facts of this case aptly demonstrate some of the problems this would present.
5. Article 9 secured transactions
¶ 49. A blanket lien on a judgment debtor's personal property also would frustrate the legislature's goal of a uniform system of secured transactions. The Wisconsin Legislature adopted the Uniform Commercial Code in 1965 in order to "simplify, clarify, and modernize the law governing commercial transactions." Wis. Stat. § 401.103(1)(a).
*369 ¶ 50. Chapter 409 governs secured transactions and works toward these stated goals by prescribing the steps a party must take to obtain and perfect a security interest in personal property.[16] Wis. Stat. § 409.203; Wis. Stat. § 409.301 et. seq.; see generally Smith & Spidahl Enters., Inc. v. Lee, 206 Wis. 2d 663, 673, 557 N.W.2d 865 (Ct. App. 1996) ("Fashioning equitable solutions to mitigate the hardship of [statutory] requirements on particular creditors undermines [the system's] purpose. . . . [R]elaxing [statutory] requirements does not. . . justify the uncertainty and inconsistency that would result from such an approach.").
¶ 51. Article 9 does not apply to the present case. Wis. Stat. § 409.109(4)(i). Judgment creditors are unsecured creditors with regard to a debtor's personal property. Still, the impact of a blanket lien on the statutory scheme for secured transactions provides additional understanding of the conflicts that such a lien would create. We explain in more detail the implications a blanket lien would have on lending, paying particular attention to Wis. Stat. ch. 409 in Attorney's Title Guaranty Fund v. Town Bank, 2014 WI 63, ¶¶ 30-36, 355 Wis. 2d 229, 850 N.W.2d 28, released today.
¶ 52. And finally, we conclude that if a judgment creditor were to have a blanket lien on all the personal property of a judgment debtor that precludes other creditors from pursuing collection, that is a policy *370 choice better left to the legislature than to the courts. Compare Cal. Civ. Proc. Code § 708.110(d) (providing for a lien on non-exempt personal property for one year from service of notice to appear at supplemental proceedings); 735 ILCS 5/2-1402(m) (judgment "becomes a lien" on non-exempt personal property when citation from the clerk is served).[17]
C. Application
¶ 53. Decade contends that because it served an order to appear for supplemental proceedings, it has a blanket lien on all of Collier's non-exempt personal property. However, Decade does not explain how it *371 acquired this lien. Instead, it skips that step in the analysis and discusses perfection of its lien.
¶ 54. SB1 asserts that "neither Decade nor Keierleber had any interest in actually recovering money from Collier." This view is supported by "the record[, which] suggests that Collier evaded service from SB1 for months and that Decade's six lawsuits were filed as a dilatory tactic." Associated Bank, No. 2011AP2597, unpublished slip op., at ¶ 18. Should we adopt Decade's position, we would be affirming Decade's ability to shelter Collier's assets from SB1 and other creditors. SB1 asserts that if Decade's contention were correct, by serving Collier with an order to appear, Decade could prevent other creditors from executing on Collier's personal property while Decade itself took no steps to apply Collier's property in satisfaction of Decade's judgment. Therefore, as long as Decade continued to take no action to collect, Collier would remain in possession of his personal property, flouting the "noble proposition that debtors ought to pay." David Gray Carlson, Critique of Money Judgment (Part Two: Liens on New York Personal Property), 83 St. John's L. Rev. 43, 44 (2009).
¶ 55. SBl's argument has a lot of merit. SB1 has not only docketed its money judgment and served Collier with an order to appear for supplemental proceedings, SB1 also obtained a turnover order through a receiver for Collier's identified personal property thereby levying that property. Accordingly, SB1 has a lien on that levied property that is superior to other unsecured judgment creditors.
¶ 56. In addition, we conclude that Decade does not have the exclusive right to pursue collection from Collier's personal property simply by serving him with a notice to appear at supplemental proceedings because *372 Decade had not docketed its judgment and proceeded in its collection efforts sufficient to acquire a lien on any of Collier's personal property.
¶ 57. Before concluding, we briefly address Decade's contention that the circuit court erroneously exercised its discretion when it refused to give Decade priority over SB1 in regard to Collier's personal property. Decade contends that the circuit court should have employed its equitable powers and held its judgment was docketed because the failure in docketing was due to the error of the clerk. Again, we disagree.
¶ 58. First, if Decade suffered any damages due to the clerk's error, the legislature has provided a statutory remedy for that error in Wis. Stat. § 806.10(3). Second, the circuit court balanced Decade's lawsuits and supplemental proceeding with Collier's apparent evasion of service of SB1's order to appear and concluded that Decade's failure to docket should not be accorded an equitable remedy. Third, we agree with the court of appeals that serving an order to appear for supplemental proceedings is not the equivalent of docketing a money judgment. "In a race-notice jurisdiction such as Wisconsin, prompt docketing of judgments is needed to establish the proper priority of claims." S. Milwaukee Sav. Bank v. Barrett, 2000 WI 48, ¶ 40, 234 Wis. 2d 733, 611 N.W.2d 448. Fourth, a properly docketed judgment is required to obtain a statutory lien on real property. Wis. Stat. § 806.15; Builder's Lumber Co. v. Stuart, 6 Wis. 2d 356, 364, 94 N.W.2d 630 (1959). No less should be required for personal property. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion when it refused to grant Decade equitable relief.
*373 III. CONCLUSION
¶ 59. We conclude that supplemental proceedings under ch. 816 are a discovery tool in aid of judgment collection. Decade's serving Collier with an order to appear for supplemental proceedings did not give rise to a blanket lien on all of Collier's personal property that prevented SB1 from pursuing collection. A judgment creditor obtains an interest in a judgment debtor's identified, non-exempt personal property superior to other unsecured creditors when it dockets its money judgment, identifies specific personal property and levies that property. Levying may be accomplished by at least three different means: (1) by executing against specific personal property with the assistance of a sheriff; (2) by serving the garnishee defendant in a garnishment action to seize specific property in the hands of the garnishee defendant; or (3) by obtaining an order to apply specific personal property to the satisfaction of the judgment, which a creditor may do with the assistance of a supplemental receiver. Wis. Stat. § 815.05(6); Wis. Stat. § 812.01; Wis. Stat. § 816.08.
¶ 60. Here, SB1 was the first judgment creditor with a docketed money judgment to levy specific, nonexempt personal property of Collier. It did so by obtaining a court order to turn over specifically identified property to its receiver. Accordingly, we affirm the decision of the court of appeals that concluded that SB1 has priority over Decade in regard to the specific personal property SB1 identified and levied. However, insofar as the decision of the court of appeals can be read to recognize a blanket lien in favor of SB1 that prevents other creditors from pursuing collection from Collier's personal property, we modify that decision because no blanket lien exists.

*374
By the Court.

The decision of the court of appeals is modified and as modified, affirmed.
¶ 61. DAVID T. PROSSER, J., did not participate.

 Associated Bank N.A. v. Collier, No. 2011AP2597, unpublished slip op. (Wis. Ct. App. Nov. 28, 2012).

 The Honorable Donald J. Hassin, Jr. of Waukesha County presided.

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 The judgment also related to Collier's default on a $1.8 million promissory note, which he secured with his interest in Clearwater Bay Investors, LLC. This debt is not part of the proceedings before us.

 The parties seem to agree that the failure to enter Decade's judgment in the judgment and lien docket was due to a clerk's error.

 In explaining its refusal to separate execution and supplemental proceedings, the court of appeals held that "[w]ithout a creditor's lien, there is no right to pursue collection under § 816.03." Associated Bank, No. 2011AP2597, unpublished slip op., ¶ 16. This statement may simply express the same uneasiness we have with allowing a creditor to circumvent statutory execution processes. Lest our affirmation of the decision of the court of appeals be construed to recognize a blanket lien that gives an unsecured judgment creditor the exclusive right to pursue collection from all of the judgment debtor's personal *354 property, we clarify that no such blanket lien exists or is necessary to pursue collection from a judgment debtor.

 Garnishment actions vary in type and requirements. For example, under certain circumstances, a garnishment action may be commenced prior to judgment. See Wis. Stat. § 812.02; *356 Wis. Stat. § 812.05. In addition, the filing of a garnishment action does not assure that other creditors do not have a superior claim to the property the garnishee holds. See Wis. Stat. § 812.11(5).

 It should be noted that when two judgment creditors with docketed money judgments each attempt to levy identified, non-exempt personal property, or when a perfected secured party's rights are at issue, further analysis may be necessary to determine relative priorities.

 While the reasoning in Holton v. Burton, 78 Wis. 321, 47 N.W. 624 (1890), is interesting, we note that the statutes then employed have been changed significantly.

 Early New York cases are particularly persuasive because Wisconsin adopted its supplemental proceeding statutes from New York. Robert S. Moss, Supplementary Proceedings in Wisconsin, 23 Marq. L. Rev. 49, 51 (1939). These cases also support our interpretation. While the New York and Wisconsin supplemental proceeding statutes were still comparable, the New York rule was "to give the creditor a lien on the debtor's equitable assets which was [an] 'inchoate' [lien] at the time the *362 examination order was served." See Isadore H. Cohen, Collection of Money Judgments in New York: Supplementary Proceedings , 35 Colum. L. Rev. 1007, 1015-17 (1935) (citing Edmonstone v. McLoud, 16 N.Y. 543 (N.Y. 1858); Lynch v. Johnson, 48 N.Y. 27 (N.Y. 1871)).

 We ultimately held that "where different judgment creditors are prosecuting supplementary proceedings against the same debtor at the same time," only one receiver should be appointed. Kellogg v. Coller, 47 Wis. 649, 657, 3 N.W. 433 (1879).

 See also Alexander v. Wald, 231 Wis. 550, 552, 286 N.W. 6 (1939) ("bankruptcy proceedings had not displaced the lien acquired by the receiver upon his appointment"); Cohen, supra note 10, at 1016 (in New York, it was only upon appointment of a receiver that a creditor's interest "ripen[ed] into a full lien").

 See In re Badger Lines, Inc., 140 F.3d 691, 694-95 (7th Cir. 1998) (finding that Kellogg's omission of a perfection requirement is "too thin a reed on which to rest [an] important [priority] determination, especially in light of the significant changes which have occurred in debtor/creditor law in the 120 years since" that decision).

 At least one commentator seemed to view the Badger Lines as a departure from older case law, noting that:
The Wisconsin Supreme Court, In re Badger Lines, Inc., 224 Wis. 2d 646, 590 N.W.2d 270 (1999), held that service upon the debtor of an order to appear at a supplemental examination under Chapter 816 establishes at the time of service a lien in favor of the creditor without requiring the creditor to take additional steps to perfect the lien ... The court rejected arguments that, to avoid a secret lien, some additional action should be required of a judgment creditor. The court also rejected arguments that the lien should not arise until a supplemental receiver is appointed or the court issues a turnover order as to the debtor's assets; the court *366 held that the lien arises at an earlier stage, when the judgment debtor is served with the order to appear at the supplemental examination. See Holton v. Burton, 78 Wis. 321, 47 N.W. 624 (1890).
Robert A. Pasch, 12 Wisconsin Practice Series: Wisconsin Collection Law § 16:13, at 330-31 (2d ed. 2006). Pasch also noted the breadth of the decision, explaining that the case "references the lien as a 'receiver's lien,' [but] ... appears to have broader application to the lien of a judgment creditor pursuing supplemental proceedings." Id. at 331.

 Wisconsin Stat. ch. 409 governs voluntarily given security interests, rather than creditors' rights represented by a judgment. Wis. Stat. § 409.109(4)(i) (chapter does not apply to "assignment of a right represented by a judgment, other than a judgment taken on a right to payment that was collateral"). Under this system of secured transactions, a creditor obtains a security interest in property the debtor has assigned as collat *367 eral that is enforceable against the debtor when "attachment" occurs pursuant to Wis. Stat. § 409.203. The creditor's security interest is valid against the claims of other creditors when it perfects that interest by meeting "all of the applicable requirements for perfection in ss. 409.310 to 409.316." Wis. Stat. § 409.308. These "applicable requirements" vary depending on the type of collateral, but the general rule is that "a financing statement must be filed to perfect all security interests." § 409.310(1). See Attorney's Title Guaranty Fund, Inc. v. Town Bank, 2014 WI 63, 355 Wis. 2d 229, 850 N.W.2d 28.

 Article 9 of the Uniform Commercial Code is contained in Wis. Stat. ch. 409. Nat'l Operating, L.P. v. Mut. Life Ins. Co. of N.Y., 2001 WI 87, ¶ 31, 244 Wis. 2d 839, 630 N.W.2d 116 ("Wisconsin has adopted each section of the U.C.C. relevant to this case. This includes all of Article 9, which is embodied in Chapter 409 of the Wisconsin Statutes. Chapter 409 does not vary in any material respect from the uniform law.").

 Wisconsin is not the first state to face problems regarding the idea of a common law lien arising out of supplemental proceedings. Illinois courts were split on whether the issuance of a "citation to discover assets," a procedure akin to supplemental examination, created a lien, until the legislature expressly provided for the creation of a lien. Prior v. Farm Bureau Oil Co., 176 B.R. 485, 492 (Bankr. S.D. Ill. 1995); see Francis Edward Stepnowski, Less Than Perfected: Uncertainty in Illinois Judgment Lien Law, 13 N. Ill. U. L. Rev. 33, 41 (1992) (before the legislature provided for the lien, Illinois case law created uncertainty, "whereas today's business climate requires bright-line rules to determine priority among creditors"). The New York legislature similarly provided for a lien upon "securing of] an order for delivery of, payment of, or appointment of a receiver of, a debt owed to the judgment debtor or an interest of the judgment debtor in personal property" in order "to avoid the confusion of... former law." N.Y. C.P.L.R. § 5202 (Consol. 2013) and Advisory Committee Notes subd. (b); see Cohen, supra note 10, at 1015-17. Finally, the California legislature has provided for a lien on personal property that is compatible with Article 9. See Cal. Civ. Proc. Code § 697.510(a) (providing judgment creditors with the equivalent of a security interest in a debtor's personal property when the creditor files notice of a judgment in the state's central filing system).